Vernon BRINKER, Appellant,

v.

Caspar WEINBERGER, Secretary of
Health, Education and
Welfare, Appellee.

No. 75–1130.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1975.

Decided Sept. 3, 1975.

**14**

Arnold M. Bellis, St. Paul, Minn., for appellant.

Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This action was instigated by Vernon Brinker pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the Social Security Administration's decision disallowing his claim for a period of disability as defined by section 216(i), and for disability insurance benefits under section 223, 42 U.S.C. §§ 416(i) and 423. Following the claimant's exhaustion of his administrative remedies, including a hearing before an administrative law judge and an adverse decision from the Appeals Council, the decision by the Secretary of Health, Education and Welfare was reviewed by the district court,[1] which granted the Secretary's motion for summary judgment. That court held that the findings of the Secretary were supported by substantial evidence in the record and conclusive. We reverse and remand to the district court with instructions to enter summary judgment in favor of Brinker.

Brinker claims that he suffers from back injuries incurred on May 22, 1969, and September 29, 1969, during this employment as a truck driver at Macalester College. These back injuries allegedly prevent him from engaging in gainful employment since exertion or movement increases the intensity of his back pains. The administrative law judge, whose findings were adopted by the Appeals Council, found that Brinker was not suffering from a disability as that word is defined in section 223 of the Social Security Act. Since Brinker challenges this finding, the central issue is whether or not he has a disability as statutorily defined.[2]

A threshold issue to be considered is whether the doctrine of res judicata bars consideration of Brinker's application for disability insurance benefits. Brinker filed an initial application for benefits on April 15, 1970, but the Director of the Bureau of Disability Insurance declared that Brinker was not entitled to benefits because he did not meet the statutory requirements. Although the letter also advised Brinker that he had six months to file a request for reconsideration, he failed to do so. Brinker did file, however, a second application for disability insurance benefits on April 16, 1971. At a hearing on this second application, the

---

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

2. Section 223(d) of the Act, 42 U.S.C. § 423(d), provides:

   (d)(1) The term "disability" means—
   (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *

   (2) For purposes of paragraph (1)(A)—
   (A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering this age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. * * *

administrative law judge specifically found that the prior administrative determination on June 15, 1970, was res judicata.[3]

Brinker contends that the reopening regulation of the Social Security Act[4] rather than res judicata is properly applicable to his second application for benefits. The Secretary, however, asserts that the administrative law judge acted within his discretion in giving the initial determination res judicata effect since Brinker failed to request reconsideration of that decision within the required six month period.[5] Moreover, the Secretary advocates only a showing of "good cause" could justify invocation of the reopening regulation. In this regard, the administrative law judge found that "good cause" had not been established.

■ Although application of the doctrine of res judicata to administrative decisions serves a useful purpose in preventing relitigation, it is not applied with the same rigidity as its judicial counterpart. *United States v. Smith*, 482 F.2d 1120, 1123 (8th Cir. 1973). Moreover, *Grose v. Cohen*, 406 F.2d 823, 825 (4th Cir. 1969), recognized that "practical reasons may exist for refusing to apply it." The existence of the reopening regulation indicates that it is undesirable to attribute finality to every administrative decision. 20 C.F.R. § 404.957.

■ The Social Security Regulations clearly provide that an initial determination may be reopened within twelve months from the date of the notice of the initial decision. 20 C.F.R. § 404.-957(a). Since Brinker did file a second application within the necessary time period, his application for disability benefits was subject to being reopened. The doctrine of res judicata, therefore, is inapplicable to the instant case. *See Leviner v. Richardson*, 443 F.2d 1338, 1342 (4th Cir. 1971). Both the administrative law judge and the district court incorrectly required a showing of "good cause" since that showing is only necessary for a reopening after twelve months. *See* 20 C.F.R. § 404.957(b).

Furthermore, it is immaterial that Brinker's second application was framed as a new application rather than a petition to reopen. In *Leviner v. Richardson, supra*, 443 F.2d at 1342, the court emphasized that the reopening regulation

> also serves to identify decisions that should not be interposed to deny subsequent applications. A decision that is subject to being reopened provides an inappropriate bar.

*Id.* The dictates of equity and fundamental fairness that allow a decision to be reopened preclude use of the same decision as a foundation for res judicata. *See Grose v. Cohen, supra*, 406 F.2d at 825.[6]

**3.** The applicable regulation is 20 C.F.R. § 404.-937(a), which reads:

> The Administrative Law Judge may, on his own motion dismiss a hearing request, either entirely or as to any stated issue, under any of the following circumstances:
>
> (a) *Res judicata*. Where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the same facts pertinent to the same issue or issues which has become final either by judicial affirmance or, without judicial consideration, upon the claimant's failure timely to request reconsideration, hearing, or review, or to commence a civil action with respect to such determination or decision. * * *

**4.** Regulation 20 C.F.R. § 404.957 provides:

> An initial, revised, or reconsidered determination of the Administration or a decision

or revised decision of a hearing examiner or of the Appeals Council which is otherwise final * * * may be reopened:

> (a) Within 12 months from the date of the notice of the initial determination * * * to the party to such determination, or
>
> (b) After such 12-month period, but within 4 years after the date of the notice of the initial determination * * * to the party to such determination, upon a finding of good cause for reopening such determination or decision * * *

**5.** *See* 20 C.F.R. § 404.911.

**6.** Without even considering the impact of the reopening provision, the doctrine of res judicata would have been relevant only to the period prior to June 15, 1970, the date of the administrative determination of Brinker's first application. The fact that the administrative law judge proceeded to a complete de novo review

■ The fundamental issue to be considered in this case is whether there is substantial evidence in the record as a whole to support the administrative law judge's finding that Brinker was not suffering from a disability as that word is defined in section 223(d) of the Social Security Act. 42 U.S.C. § 423(d). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to suppoɪ ̵ a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting from Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). In making this inquiry, we should neither consider a claim de novo nor abdicate our function to carefully analyze the entire record in conducting a review. *Yawitz v. Weinberger*, 498 F.2d 956, 957 (8th Cir. 1974).

Brinker was born in 1921. After completing the eighth grade, he worked as a farmer on his father's farm. From 1942 through 1946, he served in the air force as a gunner and afterwards worked as a crane operator. He also operated as a self-employed truck driver from 1955 through 1960 and finally went to work at Macalester College in 1960, where he was employed at the time of the accidents causing his injury. Following the accidents, Brinker attempted to continue working while undergoing medical treatment. He claims, however, that his back pain became so painful that he could no longer work after October 21, 1969.

In October 1969 he began receiving medical treatment from Dr. Ivan Schloff, an orthopedic surgeon. Dr. Schloff diagnosed Brinker's condition as a degenerative disc disease of the lumbar spine with exacerbation, and a plaster body cast was applied. The body cast seemed to reduce his pain, and the cast was later replaced by a back brace. On February 4, 1970, he returned to work at Macalester College at a job involving lighter work with specific limitations on bending and lifting. After resuming work, however, Brinker claims that he experienced increased pain.

Brinker was eventually hospitalized on February 25, 1970, for aggravation of his lumbo sacral strain. After his release from the hospital, he realized some temporary improvement, but was later readmitted for a discogram. The findings at this time showed both protruding discs and a degenerated disc. Consequently, he was readmitted to the hospital on June 16, 1970, and placed in a hip cast for two weeks. After the removal of the cast, Dr. Schloff expressed the opinion that Brinker could never return to his former job nor any other job requiring lifting and bending. Furthermore, Dr. Schloff estimated that Brinker had a 25% permanent partial disability of the spine as a result of the accidents.

During 1970 Brinker underwent psychological and vocational evaluation at the State of Minnesota Department of Education, Division of Vocational Rehabilitation (DVR). The generally unencouraging test results relating to retraining and placement, however, ultimately resulted in the issuance of a DVR report that Brinker was "unemployable" because he had to wear a back brace, his education was minimal, he lacked special skills, and was experienced only in common labor.[7]

■ Generally, a claimant for disability benefits must show a medically established impairment that prevents him from performing any substantial and gainful employment which exists in the national economy for which he is qualified by his age, education and work experience. 42 U.S.C. § 423(d). *See Lund v. Weinberger*, 520 F.2d 782 at 784 (8th Cir. 1975); *Yawitz v. Weinberger*, 498 F.2d 956, 959–60 (8th Cir. 1974). This

---

of Brinker's second application indicates that res judicata was not considered to be entirely applicable.

7. Although not material to the disposition of this appeal, it is noteworthy that the Veterans Administration awarded Brinker a monthly disability pension and Workmen's Compensation awarded him a lump-sum payment.

court has repeatedly set out the relevant legal standards for receiving such benefits. *See, e. g., Klug v. Weinberger,* 514 F.2d 423 at 424 (8th Cir. 1975). As stated in *Klug* those standards are:

(a) the claimant has the burden of establishing his claim; (b) the Act is remedial and is to be construed liberally;

(c) the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence; (d) substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (e) it must be based on the record as a whole; (f) the determination of the presence of substantial evidence is to be made on a case-to-case basis; (g) where the evidence is conflicting it is for the Appeals Council on behalf of the Secretary to resolve those conflicts; (h) the statutory definition of disability imposes a three-fold requirement (1) that there be a medically determinable physical or mental impairment which can be expected to [result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months], (2) that there be an inability to engage in any substantial gainful activity, and (3) that the inability be by reason of the impairment; (i) such substantial gainful activity is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training, and experience; (j) the emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable; and (k) it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within the range of the claimant's capacity remains for him to exercise. (Footnote omitted.)

*Id. See also Garrett v. Richardson,* 471 F.2d 598 (8th Cir. 1972); *Celebrezze v. Bolas,* 316 F.2d 498 (8th Cir. 1963).

It is also well-established that once a claimant demonstrates that his impairment is so severe as to preclude him from performing his former work, the burden shifts to the Secretary to prove there is some other kind of substantial gainful employment that the claimant could perform. *Lund v. Weinberger, supra,* 520 F.2d at 785; *Klug v. Weinberger, supra,* 514 F.2d at 425. *See also Timmerman v. Weinberger,* 510 F.2d 439, 443 (8th Cir. 1975); *Stark v. Weinberger,* 497 F.2d 1092, 1097–98 (7th Cir. 1974). *See generally* Annot. 22 A.L.R.3d 440 (1968).

The record reveals no substantial evidence to support the conclusion that Brinker could perform at his former employment at Macalester College. Dr. Schloff concluded that Brinker could never return to his former work. Brinker's own attempt to do so and his concomitant failure provide corroboration. Further, the findings of the administrative law judge specifically state that Brinker is " 'occupationally handicapped' from returning to any of his past jobs."

Since Brinker established that his impairment is sufficient to preclude him from performing at his former employment, the burden shifted to the Secretary to show other kinds of substantial gainful employment he could perform. To meet this burden, the administrative law judge relied solely upon the testimony of Mrs. Jane Moncharsh, a vocational expert. Notably, Mrs. Moncharsh testified only from the available administrative record of the case and admitted that she had no prior personal contact with Brinker. By using the Dictionary of Occupational Titles and taking into consideration Brinker's restrictions and residual skills, she believed the record demonstrated that Brinker could perform several kinds of bench jobs involving light, sedentary work. She also testified to the existence of such jobs in the Twin Cities metropolitan area.

It is clear that the Secretary need not find a specific employer or job for a claimant. *Timmerman v. Weinberger,*

*supra*, 510 F.2d at 442; *Garrett v. Richardson, supra*, 471 F.2d at 600. To establish that a claimant for disability benefits has the ability to engage in any substantial gainful activity, however, it must be shown that the claimant can *realistically* perform in existing employment. *See Nichols v. Gardner*, 361 F.2d 963, 966 (8th Cir. 1966); *Celebrezze v. Bolas*, 316 F.2d 498, 501 (8th Cir. 1963). *Cf. Timmerman v. Weinberger, supra.* In *Celebrezze*, the court described substantial gainful activity as follows:

> The activity in which a disabled claimant can be found to be able to engage must be both substantial and gainful and within his capacity and capability, realistically judged by his education, training and experience.

316 F.2d at 501, *quoting from Ribicoff v. Hughes*, 295 F.2d 833, 837 (8th Cir. 1961). The court further stated:

> Such a determination requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.

316 F.2d at 501, *quoting from Kerner v. Flemming*, 283 F.2d 916, 921 (2d Cir. 1960). Moreover, in determining whether a claimant can engage in *any* substantial gainful activity, the "word 'any' must be read in the light of what is reasonably possible, not what is conceivable." *Kohrs v. Flemming*, 272 F.2d 731, 736 (8th Cir. 1959).

Significantly, Mrs. Moncharsh's testimony, that Brinker could engage in various jobs existing in the economy, was merely hypothetical since she had seen no information concerning Brinker's actual work performance after his last attempt at employment in 1970. For example, she answered the following specific questions as follows:

Q. Do you have any information concerning Mr. Brinker's hand dexterity or finger dexterity?

A. No, I mentioned that would be something that would certainly be helpful, one of the evaluations, for example, St. Paul Rehab Center—

Q. Or do you have any information concerning his production ability. The ability to—well, handle assembly line, you know, objects in a productive way—keep up with other people on the line?

A. No, just that he has shown, of course, some eye/hand/foot coordination and manual dexterity on the jobs he has done, but not the fine finger dexterity that's necessary.

\*    \*    \*    \*    \*    \*

Q. Now assuming he, I'm sure he did go to the Wilder Clinic for evaluation; you would think that those people there would have tried him out on a punch press, as you suggested, packaging—

A. That is correct.

Q. —and so forth. That's why you said in the beginning of your testimony that that information would be helpful?

A. That is correct, yes.

Q. Do you think it might alter the opinions you have expressed here today if it were shown that he demonstrated no usable skill for employment in any of these areas?

A. Oh, certainly. There is nothing like performance.

Q. Would you say then that your opinions are, well, to a large extent hypothetical, because you do not have any real information concerning his performance?

A. Hypothetical and based on the skills that I mentioned he has demonstrated, and their transferability into other positions.

Q. Right, but that in turn depends on—you know what his actual performance—

A. That's correct.

Furthermore, her opinion was rendered without the benefit of the evalua-

tive report from the St. Paul Rehabilitation Center, where Brinker had been thoroughly tested for vocational aptitudes and skills.[8] This report constituted the only evaluation of Brinker's actual work performance ability after his injury. The results of these tests indicated that while Brinker was found to possess some skills sufficient to perform entry-level work in the mechanical and assembly area, his finger dexterity was poor, his actual work tolerance was very low, and he was unable to engage in any type of work which required any degree of standing. Moreover, his low work tolerance was termed "unfortunate" in the report, because even stationary "sitting" jobs require one to stand occasionally. The report also indicated that no appropriate job was ever found for Brinker despite extensive vocational counselling and placement efforts.

The acceptability of Mrs. Moncharsh's testimony was further diminished by the contradictory testimony of other witnesses at the hearing. Mr. Arval Christiansen, a vocational placement expert, expressed the opinion that assembly work was impossible for Brinker because of his difficulties in lifting, bending, reaching and sitting. The testimony of Mr. Bernard Matschenbacher, the director of placement for Brinker's union, and of Brinker himself are also supportive of Brinker's actual unemployability.[9]

We conclude that the opinion testimony of Mrs. Moncharsh, that Brinker could engage in various jobs existing in the economy, indicates only what is conceivable and fails to adequately consider his actual performance ability to *realistically* engage in substantial gainful employment. *Cf. Nichols v. Gardner*, 361 F.2d 963 (8th Cir. 1966). Her testimony is insufficient to establish existing employment opportunities for Brinker when compared with the realistic certainty attendant the St. Paul Rehabilitation Center report and the testimony of the other witnesses.

Furthermore, we find that the administrative law judge incorrectly emphasized that Brinker had refused surgery. No evidence which would support that finding appears in the record. On the contrary, Dr. Schloff apparently counselled against surgery. Moreover, insufficient weight was given to Brinker's claims that he suffered from pain as a result of his back condition. Brinker's testimony is substantial in this regard, and there is no evidence in the record to the contrary. Finally, the administrative law judge unjustifiably concluded that Brinker lacks vocational motivation. This also seems inappropriate since Brinker attempted to return to work at Macalester College and continually sought vocational rehabilitation and placement for over three years.

We hold that Brinker met his burden of proof and established that he was disabled within the meaning of the Social Security Act. There is no substantial evidence in the record as a whole to support the denial of disability benefits. The administrative law judge considered Brinker's disability only in the abstract rather than evaluating the impact of the disability on Brinker and his actual performance ability.

We reverse the judgment of the district court and remand the case with directions to grant summary judgment for Brinker.

8. This report was not available until after the hearing, but it was included in the record and considered by the administrative law judge.

9. Extensive testimony exists in the record to the effect that Brinker was "unemployable" because of the preference of employers to hire able-bodied individuals. This fact is not help-ful to the appellant, however, since the Social Security Act clearly states that the unwillingness of employers to hire the handicapped should not be considered in determining disability. 42 U.S.C. § 423(d)(2)(A). *See Miller v. Finch*, 430 F.2d 321 (8th Cir. 1970); *Gentile v. Finch*, 423 F.2d 244 (3d Cir. 1970).