17 F.Supp.2d 885 (1998)
Leroy MUSSMAN, Plaintiff,
v.
Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.
No. 3-97-CV-90155.
United States District Court, S.D. Iowa, Davenport Division.
August 20, 1998.
*886 John A. Bowman, Davenport, IA, for Plaintiff.
Christopher D. Hagen, Asst. U.S. Atty., Des Moines, IA, for Defendant.

MEMORANDUM OPINION AND ORDER
PRATT, District Judge.
Plaintiff, LeRoy Mussman, filed a Complaint in this Court on September 3, 1997, *887 seeking review of the Commissioner's decision to deny his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 (1994). This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the Commissioner's decision is reversed and the Commissioner is ordered to award benefits.

BACKGROUND
Plaintiff filed an application for disability benefits on October 24, 1994, claiming an onset of disability date of October 1, 1994. Tr. at 154-57. His application was denied initially and upon reconsideration. After a hearing (Tr. at 74-136), Administrative Law Judge Jean M. Ingrassia (ALJ) issued a decision on March 25, 1996, denying benefits. Tr. at 19-32. On July 9, 1997, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. at 15-16. On July 17, 1997, the Appeals Council received, and entered into evidence, a report from the treating physician. Tr. at 14. On the same day, July 17, the Appeals Council issued a new decision in which they concluded that the new evidence did not provide a basis for changing the ALJ's decision. Plaintiff filed his Complaint in this Court on September 3, 1997. On September 24, the Appeals Council issued a new order. This time the Appeals Council received, and considered, a report from the treating physician dated August 5, 1997. The Appeals Council concluded, however, that the new report, did not provide a basis for reopening the previous decision to affirm the ALJ's decision. Tr. at 5-6.
Plaintiff was born December 28, 1937. Tr. at 154. At the time of his application and onset of disability, he was 56 years old. From 1966 to 1988, Plaintiff worked as a production inspector for Caterpillar Tractor. Tr. at 166. This job ended when the plant closed. Tr. at 87. Thereafter, Plaintiff worked as a toll taker, and as a locksmith. Tr. at 166. Plaintiff testified that when he began working at Caterpillar, he was going to Radio Electronic Television Schools, and earned a diploma in electronics. During the time he worked as a production inspector, Plaintiff also repaired radios and televisions on the side. His job as a locksmith involved installing security systems and closed circuit television systems. Tr. at 89-90.
A medical record dated October 5, 1994, from E.N.T. Associates, states that Plaintiff has a history of intermittent vertigo dating back four years. Two and a half weeks prior to the examination, Plaintiff developed vertigo aggravated by movement which persisted. Tr. at 191. These records also indicate that Plaintiff had been treated for high blood pressure, and difficulty hearing. Tr. at 190-99. An MRI of Plaintiff's brain, dated October 10, 1994, although essentially normal, showed "a few small areas of increased signal intensity on the proton density and T2 weighted sequences in the basal ganglia and periventricular white matter. These are most likely small ischemic foci." Tr. at 209.
Plaintiff was seen by Jill Kimm, M.D., of Neurology Consultants, on October 20, 1994. After an examination, Dr. Kimm stated that it was possible that Plaintiff has Meniere's syndrome. "He certainly has a triad of hearing loss, vertigo and tinnitus," wrote Dr. Kimm. Dr. Kimm also wrote that she was concerned about the amount of small vessel damage in Plaintiff's brain which was shown in the MRI study. Tr. at 212. Dr. Kimm concluded her report: I have told Mr. Mussmann that he must stay off work while he remains symptomatic. It is possible that he may need to pursue Social Security disability if his symptoms persist in an unremitting fashion. Tr. at 213.
Plaintiff saw Dr. Kimm again on November 15, 1994. Dr. Kimm noted that Plaintiff had been taking his medication as prescribed and that Plaintiff "noted his vertiginous episodes are dramatically improved". Dr. Kimm noted, however, that it "certainly it is unsafe for him to work." Tr. at 225
Plaintiff was seen by Akshay Madadevia, M.D. on December 1, 1994 for sleep difficulties. Plaintiff's wife told the doctor that Plaintiff has several apneic events at night. Plaintiff reported that he wakes up tired and feels like he did not sleep at all. He feels sleepy and tired throughout the day. Although present for the past several years, the symptoms had been getting progressively worse. Tr. at 226. In view of the symptoms, *888 it was Dr. Mahadevia's impression that Plaintiff has obstructive sleep apnea. A polysomnogram was scheduled. Tr. at 227. The polysomnogram report, dated December 5, 1994, indicated the presence of moderate degree of obstructive sleep apnea with significant oxygen desaturation and habitual snoring. Tr. at 229.
On December 13, 1994, Plaintiff told Dr. Kimm that "he has had a severe episode of dizziness and vertigo with some ataxia over the last three to four days. The doctor opined that Plaintiff would have intermittent symptoms for the rest of his life." Tr. at 243. On January 5, 1995, Plaintiff reported to Dr. Kimm that he had been fired from his job, had no money and that he needed a release to stay off work to help him obtain Social Security. The author of the office note wrote: "JK stated that there is no reason why he cannot work. His symptoms do not excuse a permanent vacation from work and she suggested that he needs to find a job, that he needs to take at least another month off to let the medication and the dizziness improve a little bit but after that he does need to find some work." Tr. at 214.
On January 26, 1995, Dr. Mahadevia reported that Plaintiff had noted significant improvement with the nasal CPAP, and that he felt much better. Tr. at 256.
After seeing Plaintiff on March 7, 1995, Dr. Kimm wrote: "Mr. Mussman has chronic peripheral vestibular symptoms. I do think that he is poorly motivated to get back to work. I am not sure that I see anything on his examination that indicates that he has a severe vertigo problem that would prevent him from ever returning to work." Tr. at 258. The next time Plaintiff was seen by Dr. Kimm, on June 13, 1995, the doctor wrote: "I do not think that he has improved in the 8 months that I have known him. I have to consider him disabled presently due to his inner ear problems and due to his microvascular cerebral disease. I do not think that he is going to improve. I do not think that he will be able to return to his work as a plumber[2]." Tr. at 259.
Because Plaintiff and his wife testified about difficulties Plaintiff was having with his memory and his ability to concentrate, Plaintiff's attorney asked the ALJ to order a psychological evaluation. The ALJ said that she did not believe such an evaluation was in order because: "I really don't think the record supports that he has any longitudinal history of an inability to concentrate, attend or stay on task." The attorney, therefore, asked that the record remain open so that a psychological evaluation could be arranged at Plaintiff's expense. The ALJ granted that request. Tr. at 131.
Plaintiff was seen by Jo Ann Milani, Ph.D. on September 7, 1995. Tr. at 281-84. Dr. Milani administered the Wechsler Memory Scale Form I, the Wechsler Adult Intelligence Scale -Revised (WAIS-R), and the Bender Gestalt Test. Dr. Milani wrote:
Results of these three tests indicate that Mr. Mussman has an IQ in the low average range of IQ 88 with substantial deficits in Attention and Concentration. He often forgot what he is doing and could not hold information in his head for more than a limited period of time. His long range memory for dates and facts of his life was intact. On many of the subtests he was able to tackle more difficult problems and failed easy ones. This is indicative of poor concentration and inability to stay focused. His Vocabulary subtest was intact indicating good premorbid intelligence. He could do the Block Design problems with ease but when they did become difficult he was very rigid and unable to change his approach to solving the puzzle. His most difficult tasks were keeping arithmetic problems in his head long enough to solve the problem and keeping digit span numbes reserved in his head. These subtest scores measure Freedom from Distractibility, his quotient being 79 which is lower in the borderline range of intelligence and discrepant from his 88 IQ. On the Weschler Memory Scale Form I he had more trouble with all items reflecting attention and distractibility and with remembering details *889 after being read a story. He has the general gist of the story but details were lacking. Copying designs from memory was also very difficult for him.
Mr. Mussman has much anxiety over his condition. He is very rigid in his approach to problem solving and expresses his frustration and depression openly. He does not feel in control of his life. He tends to be perfectionistic and is therefore easily discouraged with his slow and poor copying and other performances.... Attention Deficit Disorders are present in many mental disorders including organicity, depression, anxiety disorders etc. Persons with obsessive-compulsive personality are more than likely to become depressed when overwhelmed by things out of their control. One is not able to be accurate in stating that his is wholly depression or the result of subtle changes in his brain from the Meniere's Disease and the microvascular cerebral disease. These things are all so interchangeable. Attention deficit disorders are seen in many psychological disorders such as depression, anxiety obsessive-compulsive and various types of organicity.
Tr. at 283-84. Dr. Milani's diagnoses were: Axis I: Attention Deficit Disorder, Rule out Affect Disorder; Axis II: Obsessive Compulsive Personality Disorder; Axis III: Meniere's Disease, microvascular Cerebral Disease, Hard of hearing, Hypertension Complications. Dr. Milani also opined that Plaintiff's global functioning was low compared to his prior levels. Tr. at 284.
One of Plaintiff's former employer's, International Technology and Sec. Ltd. (J & G Locks) completed a Social Security Administration Work Activity Questionnaire. The employer stated that Plaintiff's condition had deteriorated in the last year, and that he had been allowed fewer or easier duties, frequent absences, and extra help/supervision. Tr. 285. When asked if Plaintiff's work was satisfactory, the employer responded "yes", but also wrote: "However, for a number of months LeRoy had gotten progressively worse and we could no longer allow him on jobs by himself." Tr. at 286.
The ALJ sent a form to Dr. Kimm on which she was asked to render her opinion regarding Plaintiff's impairments and limitations. Tr. at 288-98. Among other things, Dr. Kimm stated that she had observed "periods of memory loss". Tr. at 289. On March 7, 1997, Plaintiff's attorney submitted a form to the Appeals Council which had been filled out by Dr. Kimm. On this form, Dr. Kimm stated that Plaintiff "may work sedentary job." Tr. at 291.
At the hearing, the ALJ asked the vocational expert the following hypothetical question:
Mr. Paprocki, as to the profile, we have a 57-year-old individual with a ninth-grade education, and also specialized training in electronics, work background as described in Exhibit 37. He has been diagnosed with Meniere's disease and sleep apnea. He takes nasal C-PAP therapy at home. He has a history of vertiginous episodes and tinnitus and a progressive hearing loss, but audiograms in the record reveal excellent speech discrimination scores, and he wears a hearing aid, which enhances his hearing. He's being treated with diuretics for his Meniere's disease, and the objective evidence of record shows no nystagmus on examination and no evidence of any clinical ataxia. However, because of his episodes with dizziness, he should never climb ladders, ropes and scaffolds, and only occasionally engage in activities requiring balancing, stooping  balancing and stooping. He testified that when he is free from episodes and  he, basically, can lift frequently 20 pounds, occasionally ten pounds[3]. He has no limits on standing and walking and sitting. And it appears that the limitations that he does have are brought on by the vertiginous episodes. We have not been able to determine how often these occur and for how long they *890 last. His testimony was a little vague. The doctors can't seem to pinpoint the cause of it. They don't know whether to attribute it to Meniere's disease or hypertension. I do not find any references in the record that he has any problems with memory or concentration. Would a person with that profile be able to perform any of the jobs described in Exhibit 37?
Tr. at 120. In response, the vocational expert testified that Plaintiff would be able to do his past work as a toll collector and as a general inspector as they are done in the national economy. Tr. at 121. The vocational expert also identified several light and sedentary jobs to which Plaintiff's skills would transfer. Tr. at 124-26. When asked if an individual would be able to sit in a toll both, the vocational expert said there would be no chair, and no opportunity to sit down. Tr. at 123. When asked by Plaintiff's attorney if the vocational expert had noted anything in the record that would affect his answers, the vocational expert pointed to the testimony regarding Plaintiff's inability to concentrate and remember. Tr. at 128. He said that such limitations would eliminate the jobs he had previously mentioned. Tr. at 129.
In her decision, dated March 25, 1995, the ALJ found that Plaintiff has Meniere's disease with sleep apnea treated with C-PAP, tinnitus, hearing loss with correction by hearing aids, and controllable urinary frequency. The ALJ found that Plaintiff has the residual functional capacity to lift 20 pounds frequently and 10 pounds occasionally. The ALJ found that Plaintiff has no limits on his ability to stand, walk or sit. She found that Plaintiff should avoid climbing ladders, ropes, and scaffolding. The ALJ found that Plaintiff was able to do his past relevant work, and was, therefore, not disabled. Tr. at 31-32.

DISCUSSION
Review of a final decision of the Commissioner of Social Security, is limited to determining if the decision is supported by substantial evidence on the record as a whole. In Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir.1994), the Court wrote:
Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Reed v. Sullivan, 988 F.2d 812, 814 (8th Cir. 1993). This standard is "`something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.'" Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir.1991) (quoting Bland v. Bowen, 861 F.2d 533, 535 (8th Cir.1988)). Consequently, "even if we might have weighed the evidence differently, we may not reverse the Secretary's decision when there is enough evidence in the record to support either outcome." Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992).
A reviewing court should neither consider a claim de novo, nor abdicate it's function to carefully analyze the entire record. Brinker v. Weinberger, 522 F.2d 13, 16 (8th Cir.1975). In Holland v. Apfel, 153 F.3d 620, 621 (8th Cir.1998), the Court wrote:
Our review does not weigh the evidence to determine that a preponderance supports one result or the other; rather, we ask whether "a reasonable mind would conclude that the evidence is adequate to support the decision," Rucker for Rucker v. Apfel, 141 F.3d 1256, 1259 (8th Cir.1998), but "we must consider evidence that detracts from Commissioner's decision, as well as evidence that supports it." Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998).
In the opinion of the Court, a reasonable mind would not conclude that the evidence in this record is adequate to support the decision that Plaintiff is able to do his past work, or any other work in the national economy. The vocational expert testified that if Plaintiff were not able to remember and concentrate, he would not be able to do his past relevant work or to work at jobs to which his skills would transfer. The evidence which detracts from the decision in this regard includes the testimony of Plaintiff and his wife, the objective evidence provided by Dr. Milani, the evidence of subtle changes *891 in Plaintiff's brain noted by Dr. Milani and which were seen on the report of the MRI study, the observation of Dr. Kimm that Plaintiff has periods of memory loss, and the observations of the employer that Plaintiff's condition had progressively worsened.
Furthermore, Plaintiff's earnings history (Tr. at 161) entitles him to substantial credibility when claiming disability. Nunn v. Heckler, 732 F.2d 645, 648 (8th Cir.1984). Plaintiff worked at Caterpillar Tractor from August, 1967 to August of 1988. When he was laid off because the plant closed, he was given retirement benefits. Nevertheless, Plaintiff began working again in 1990, and continued until the onset of his disabling symptoms in October, 1994. This is not the profile of a man who is out to claim benefits for which he is not entitled.
The ALJ discounted the report of the psychological evaluation. Among the reasons given by the ALJ was that Plaintiff had never, prior to the hearing, complained of mental problems. It may well be that Plaintiff was never asked about mental problems. Although Plaintiff was being treated by a neurologist, there is no indication in the record that Dr. Kimm ever conducted a mental status examination. It may also be that because of the progressive nature of the brain damage, Plaintiff was not fully aware of his difficulty remembering, concentrating and paying attention. The fact that someone does not have complete insight into their illness is not sufficient reason to find them not disabled. In Adams v. Weinberger, 548 F.2d 239, 245 (8th Cir.1977), the Court wrote that the rationalizations of a sick individual who did not realize the extent of his own illness could not be used as evidence to deny a claim of disability.
In her decision, the ALJ wrote that Plaintiff's ability to attend to, concentrate and respond appropriately to questions asked of him at the hearing was a reason to discount the psychological report. The ALJ wrote:
The psychologist suggested that he had a weak short term memory because he seemed to forget what he was suppose to do for the psychologist. The undersigned does not find this persuasive because Mr. Mussman sat through the course of a 60 minute hearing and was able to answer all questions in a logical and concise manner. In other words, he was able to remember and state his allegations concerning the nature, location, onset, duration, frequency and intensity of symptoms as well as precipitating and aggravating factors and much other information. He was able to follow the questions asked of him by his attorney and the undersigned.... Finally, even the psychologist suggested Mr. Mussman's feelings that he "forgot everything" may be more of his inability to concentrate "than actual." But as mentioned, he was able to attend to, concentrate and respond appropriately to questions asked of him at the hearing. The undersigned finds that, based on the above discussion and inconsistencies, no attention, concentration, or memory problems have been persuasively established, certainly none of expected 12 month duration.
Tr. at 26-27. This statement is nothing other than the ALJ substituting her judgment for that of the psychologist. This is error. In Ness v. Sullivan, 904 F.2d 432, 435 (8th Cir.1990) the Court wrote: "Moreover, by substituting his observation that Ness did not appear to be depressed or unhealthy during the hearing for the medical judgment of Dr. Fielding that Ness was still suffering from depression, the ALJ ignored the law of this circuit, which states that the ALJ must not substitute his opinion for that of the physician." Dr. Milani's opinion is based on objective psychological tests which she is qualified to administer and interpret. Her opinion is uncontradicted by any other medical evidence in the record. Dr. Milani's report is substantial evidence which detracts from the decision of the ALJ.
There is some evidence in the record which supports the ALJ's decision. On December 29, 1994, Plaintiff was told that Dr. Kimm said there was no reason why he could not work and that he should find a job. Tr. at 214. In March of 1995, Dr. Kimm wrote that Plaintiff was poorly motivated to get back to work, and that the vertigo was not severe enough to prevent him from working. Tr. at *892 258. Just a few months later, however, Dr. Kimm wrote: "I have to consider him disabled presently due to his inner ear problems and due to his microvascular cerebral disease. I do not think that he is going to improve." Tr. at 259. Finally, on August 5, 1997, Dr. Kimm wrote: "It has taken nearly three years for me to become convince (sic) that Mr. Mussman is indeed disabled. As of today, I feel that he is. I am sorry that my determination has taken me so many years. In general, I feel that vertigo is not a disabling problem, but in Mr. Mussman's case it most certainly is." Tr. at 8. When the record is viewed as a whole, Dr. Kimm's early statements that Plaintiff was not disabled do not weigh heavy enough to tip the balance in favor of the ALJ's decision.
When the vocational expert answered the ALJ's hypothetical, he said that Plaintiff would be able to return to two of his past jobs, and that he had transferable skills to other light and sedentary jobs. Tr. at 121-126. When the vocational expert was asked if there was anything else in the record that if added to the hypothetical would cause him to change his testimony, he replied that Plaintiff's inability to concentrate would eliminate the jobs he had previously mentioned. Because Plaintiff's inability to concentrate was confirmed by objective testing, substantial evidence does not support a finding that Plaintiff is able to return to his past work, or that he has transferable skills. Since Plaintiff is unable to do his past work, the burden of proof is on the Commissioner to prove with medical evidence that Plaintiff has a residual functional capacity, and that other work exists in significant numbers that Plaintiff can perform in his impaired condition. McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc); O'Leary v. Schweiker, 710 F.2d 1334, 1338 (8th Cir.1983). See also, Davis v. Callahan, 985 F.Supp. 913 (S.D.Iowa1997) and cases cited therein.
Assuming, for the sake of argument, that Plaintiff has the residual functional capacity for unskilled light or sedentary work (the ALJ found that Plaintiff had the residual functional capacity to lift 20 pounds frequently, and 10 pounds occasionally with no limit on standing, walking, or sitting (Tr. at 31)), Rules 202.02 and 201.02 of the medical vocational guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, mandate a finding of disabled. A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is clearly entitled. Therefore, reversal with an award of benefits is the appropriate remedy. Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir.1984).
Defendant's motion to affirm the Commissioner is denied. This cause is remanded to the Commissioner for computation and payment of benefits.
The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). See Shalala v. Schaefer, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).
NOTES
[1] President Clinton appointed Kenneth S. Apfel to serve as Acting Commissioner of Social Security, effective September, 29, 1997, to succeed John J. Callahan. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel is hereby substituted for John J. Callahan as defendant in this action.
[2] At the hearing Plaintiff testified: "I don't know where that came from, but I've never plumbed.... I have never been a plumber. That's something  a mistake of hers some way." Tr. at 97.
[3] 20 C.F.R. § 404.1567(b) defines light work: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."