Cristy L. THUDIUM, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.

No. 4:14–cv–257 RP–CFB.

United States District Court, S.D. Iowa, Central Division.

Signed Feb. 12, 2015.

William C. Purdy, U.S. Attorney's Office, Des Moines, IA, for Defendant, Commissioner of Social Security.

Gregory W. Peterson, Law Office of Gregory W. Peterson, Des Moines, IA, for Plaintiff, Cristy Thudium.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, District Judge.

Plaintiff, Cristy L. Thudium, filed a Complaint in this Court on June 27, 2014, 2014, seeking review of the Commission-

er's decision to deny her claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed an applications for benefits on December 14 and 15, 2010. Tr. at 133–34 and 361–67. Plaintiff, whose date of birth is October 6, 1979, was 33 years old (Tr. at 409) at the time of the hearing on November 7, 2012 before Administrative Law Judge Eric S. Basse (ALJ). Tr. at 403–39. At the hearing, the ALJ explained that Plaintiff had previously been awarded a closed period of disability benefits which came to an end in 2007[1]. The ALJ explained that Plaintiff was seeking a new period of disability commencing October 13, 2010. Tr. at 409.

The ALJ issued a Notice Of Decision—Unfavorable on January 9, 2013. Tr. at 14–27. The Appeals Council declined to review the ALJ's decision on May 2, 2014. Tr. at 6–10. Thereafter, Plaintiff commenced this action.

The ALJ found that Plaintiff was last insured for Title II benefits on March 31, 2014. At the first step of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity after October 13, 2010, the amended alleged disability onset date. At the second step, the ALJ found Plaintiff has the following severe impairments: mood disorder, anxiety disorder, and borderline personality disorder. Tr. at 19. The ALJ found that Plaintiff's impairments were not severe enough to qualify for benefits at the third step of the sequential evaluation.

Tr. at 20. At the fourth step, that ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine tasks with simple, work-related decisions; few workplace changes; brief, superficial interaction with the public and co-workers, and occasional interaction with supervisors.

Tr. at 21. The ALJ found that Plaintiff is unable to perform her past relevant work. Tr. at 25. At the fifth step, the ALJ found that Plaintiff is able to do a significant number of jobs, examples of which include housekeeper, vending machine operator and laundry sorter. Tr. at 26. The ALJ found that Plaintiff is not disabled nor entitled to the benefits for which she applied. Tr. at 27.

### MEDICAL EVIDENCE

On November 12, 2012, Rosham Dasari, M.D. wrote a letter on behalf of Plaintiff. Tr. at 353–54. Dr. Dasari stated that he had been Plaintiff's psychiatrist for three years. The doctor's treatment notes are included in the record. Tr. at 300–13 and 356–60. The doctor wrote that Plaintiff's diagnoses include chronic posttraumatic stress disorder, mood disorder not otherwise specified, anxiety disorder not otherwise specified, "and a primary severe persistent mental illness of borderline personality disorder with severe primitive, but regressive defenses and core abandonment issues." The doctor wrote

---

1. In the record of the case there are two other decisions by an ALJ. One dated January 12, 2010 in which Plaintiff is awarded a period of disability beginning October 15, 2002 and ending on December 17, 2003. Tr. at 34–50. The second decision is dated February 9, 2010. Tr. at 56–73. The second decision

held that because the period of disability ended more than 12 months prior to the month in which the application for benefits was filed, Plaintiff was not entitled to any benefits based on the applications filed on October 30, 2007. Review of the 2010 decisions is not before the Court.

that Plaintiff had been treated with multiple medications "including neuroleptics (Abilify, Seroquel, Risperdal, Haldol), Depakote, Tegretol, Cymbalta, Effexor, Prozac, Paxil, Luvox, Soloft, etc." He wrote that Plaintiff was currently "on a polypharmacy to help with her mood and stability, and anxiety which she struggles with on a daily basis which would also prevent her to go out into public." Regarding Plaintiff's limitations, the doctor wrote:

> She had extreme to moderate limitations in daily activities directly related to her self esteem, lack of motivation, anergia, and panic attacks related to her posttraumatic stress disorder. Her symptoms and being on multiple medications (including Abilify, Viibryd, valium) make it very difficult for her to focus and concentrate on simple things, follow simple directions and she would struggle significantly in maintaining attention and concentration for extended periods. She would find it very difficult to remember simple work like procedures and would very possibly miss multiple days each month directly related to the severity and persistence of her mental illness. In terms of social interaction she would have marked limitations because of her posttraumatic stress disorder and her very maladaptive response to stress. She would find it very difficult to get along with coworkers and would find it extremely difficult to deal with her coworkers.

The doctor went on to state his opinion that Plaintiff's prognosis is poor for any reasonable and meaningful recovery. "[S]he will have her symptoms indefinitely." The doctor wrote: "I sincerely do not believe [Plaintiff] can do any full time competitive work and do believe that she is permanently disabled and not being able to hold any job meaningfully." Tr. at 353. The doctor opined that although Plaintiff has struggled with drug and alcohol abuse as a means of self medication, "it is my professional opinion that neither alcohol nor cannabis are directly attributable to her disability or her inability to work." Tr. at 354.

## ADMINISTRATIVE DECISION

The ALJ considered Dr. Dasari's opinion but gave it "little weight" because the ALJ found it to be inconsistent with the treatment notes in which GAF scores fluctuated and did not indicate that Plaintiff's symptoms were as severe as described in the doctor's letter. The ALJ noted that Plaintiff sees Dr. Dasari once a month and the doctor "did not test her functioning." The ALJ went on: "Further, a conclusion by a treating physician that the patient is 'disabled' or 'unable to work,' standing alone does not constitute a sufficient basis for a finding of disability within the meaning of the Social Security Act." Tr. at 24. The ALJ wrote that with the exception of Dr. Dasari, no other treating or examining physician opined that Plaintiff is disabled or that she has limitations greater than those found by the ALJ. The ALJ wrote that he gave "substantial weight" to the opinions of the physicians employed by Disability Determination Services who had neither treated nor examined Plaintiff. Tr. at 25.

## DISCUSSION

 We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue,* 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel.*

*Reutter v. Barnhart,* 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue,* 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola* [*v. Astrue*], 480 F.3d [885] at 886 [ (8th Cir.2007) ] ). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir.2005). *Owen v. Astrue,* 551 F.3d 792, 798 (8th Cir.2008.) In *Brand v. Secretary of Dept. of Health, Education and Welfare,* 623 F.2d 523, 527 (8th Cir.1980), Chief Judge Lay wrote that *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) is "the guideline for the evaluation of the standard of review." In *Universal Camera,* the Court wrote:

> We conclude, therefore, that the Administrative Procedure Act and the Taft–Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's find-
>
> ings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

*Id.,* 340 U.S. at 490, 71 S.Ct. 456. In reviewing disability decisions from the Social Security Administration, the Court sits in an appellate capacity and is responsible for giving the agency decision a scrutinizing analysis. This requires the Court to determine the substantiality of the evidence by determining if the ultimate decision is supported by substantial evidence on the record as a whole. *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987).

In *Jackson v. Bowen,* 873 F.2d 1111, 1113 (8th Cir.1989), the Court described its duty as follows:

> The district court delineated its standard of review by stating that the Secretary's decision is conclusive if supported by substantial evidence. Such a broad-based search of the record for evidence supporting the Secretary's findings is inappropriate when reviewing an administrative decision. *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987) (citations omitted). Rather the district court's review should be based on whether substantial evidence on the record as a whole supports the Secretary's decision. A notable difference exists between "substantial evidence" and "substantial evidence on the record as a whole":
>
> > "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality

of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* (citations omitted).

■ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975).

In her brief, Plaintiff makes three arguments: 1) "New and material evidence submitted at the Appeals Council level requires a remand;" 2) "The ALJ's RFC assessment is inconsistent with his own findings and unsupported by substantial evidence based on the record as a whole;" and, 3) "The ALJ submitted an inaccurate hypothetical to the vocational expert and the vocational expert testimony in this case does not constitute substantial evidence upon which the ALJ can rely."

■ Regarding Plaintiff first argument that the case should be remanded for further consideration of the evidence submitted to the Appeals Council. The Court agrees with the Commissioner that the report of Kathleen Murray, Ph.D., which the Appeals Council acknowledges receiving, was generated and concerns a period of time after the ALJ's decision which is the subject of review now. "The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b)." *Cunningham v. Apfel,* 222 F.3d 496, 500 (8th Cir.2000). The Appeals Council wrote that evidence submitted from Kathleen Murray, Ph.D. dated April 19, 2013 related to a period of time after the decision of the

ALJ which was issued on January 9, 2013. Furthermore, because the Court finds an award of benefits to be the appropriate remedy, the Court will not consider remanding the case for consideration of Dr. Murray's report.

■ The most important issue in any disability case which proceeds beyond step three of the sequential evaluation is that of residual functional capacity:

Probably the most important issue will be the question of [residual functional capacity].... The RFC that must be found ... is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.

*McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc).

■ The medical evidence in this case is limited to the report and treatment records provided by Dr. Dasari. Dr. Dasari is the only physician Plaintiff sees, and he is a specialist—a psychiatrist. In *Bernard v. Colvin,* 774 F.3d 482, 487 (8th Cir.2014), the Court wrote:

Since the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control. *Turpin v. Colvin,* 750 F.3d 989, 993 (8th Cir.2014). "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Reed v. Barnhart,* 399 F.3d 917, 920 (8th Cir. 2005) (internal quotation marks and citation omitted). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a

treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Goff,* 421 F.3d at 790 (internal quotation marks and citation omitted). An ALJ may also give less weight to a conclusory or inconsistent opinion by a treating physician. *Samons v. Astrue,* 497 F.3d 813, 818 (8th Cir.2007).

■■■ In the case before the Court, there is no suggestion that Dr. Dasari's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques. Likewise, there are no other medical assessments, either from treating or examining sources—Plaintiff does not see other doctors, and no consultative examinations were arranged. Therefore, Dr. Dasari's opinion should be given controlling weight unless it can be shown that the doctor rendered inconsistent opinions which undermine his credibility.

The only inconsistency pointed to by the ALJ is Dr. Dasari's fluctuating diagnoses on Axis V of the multiaxial diagnosis utilized in his treatment records.

The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM–IV–TR), states that a multiaxial system involves diagnoses on several axes each of which helps the clinician plan treatment and predict outcome. On Axis I, clinical disorders and other conditions that may be a focus of clinical attention are diagnosed. On Axis II, personality disorders and mental retardation are diagnosed. Axis III is for general medical conditions. On Axis IV, psychosocial and environmental problems are noted. Axis V is a global assessment of functioning or GAF. DSM–IV–TR at 27.

According to the DSM–IV–TR, "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact, and predicting outcome." *Id.* at 32.

Because the DSM–IV–TR states that the GAF scale is used to rate "psychological, social, and occupational functioning" *Id.,* it might be seen as a tool for lay people to glean the doctor's day to day opinion of a patient's ability to engage in substantial gainful activity. However, the DSM–IV–TR itself contains a caveat about how information in treatment records can be misunderstood.

When the DSM–IV categories, criteria, and textual descriptions are employed for forensic purposes, there are significant risks that diagnostic information will be misused or misunderstood. These dangers arise because of the imperfect fit between the questions of ultimate concern to the law and the information contained in a clinical diagnosis. In most situations, the clinical diagnosis of a DSM–IV mental disorder is not sufficient to establish the existence for legal purposes of a "mental disorder," "mental disability," "mental disease," or "mental defect." In determining whether an individual meets a specified legal standard (e.g., for competence, criminal responsibility, or disability), additional information is usually required beyond that contained in the DSM–IV diagnosis. This might include information about the individual's functional impairments and how these impairments affect the particular abilities in question. It is precisely because impairments, abilities, and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability. *Id.* at xxxii–iii. In the case at bar, Dr. Dasari, by means of his report, provided the additional information needed to make a factual determination of the severity of Plaintiff's mental illness. In the opinion of the Court, Dr. Dasari does not attempt to render an opinion on issues reserved to the Commissioner. *See,* 20 C.F.R.

§ 404.1527(d). Rather, the doctor opined regarding Plaintiff's diagnoses, symptoms, limitations, effects of medication, and her abilities. The doctor opined that Plaintiff's limitations are related to her illnesses including panic attacks and posttraumatic stress disorder. The doctor stated that Plaintiff's medications make it difficult for her to focus and concentrate on simple things and to follow directions. The doctor noted marked limitations in terms of social interaction and he mentioned that it is "extremely difficult" for Plaintiff to interact with coworkers. To the extent that the doctor wrote that Plaintiff was disabled, he simply stated his medial opinion that Plaintiff is not capable of holding down any kind of job. He was not stating a legal opinion that Plaintiff qualifies for benefits under the Social Security Act. The above cited regulation at § 404.1527(a)(2) states: "Medical opinions are statements from physicians ... that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." The regulation states that more weight is given to the opinion of examining physicians than to those who have not examined the claimant. 20 C.F.R. § 404.1527(b)(1) The regulation states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight....

20 C.F.R. § 404.1527(b)(2).

■ The ALJ gave "substantial weight" to the opinions of the physicians employed by Disability Determination Services. These doctors, however, neither treated nor examined Plaintiff. Not only does the above cited regulation state that such opinions are less valuable then one rendered by a treating and/or examining physician, but the regulation is consistent with the case law of the Eighth Circuit. "The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000) citing *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). There is, therefore, no substantial evidence which contradicts the opinion rendered by Dr. Dasari.

Dr. Dasari opined that Plaintiff illnesses would cause her to be absent from work several days each month. The vocational expert testified that if Plaintiff's illnesses caused her to be off task for three hours per week for at least an hour at a time, then no work is possible. The finding that Plaintiff can work in unskilled work which requires only brief and superficial interactions with the public, coworkers, and supervisors is not supported by any substantial evidence in this record. In fact, it is directly contrary to the opinion of the treating physician who wrote: "In terms of social interaction she would have marked limitations because of her posttraumatic stress disorder and her very maladaptive response to stress."

In *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980), the Court, quoting *Thomas v. Celebrezze,* 331 F.2d 541, 546 (4th Cir.

1965) wrote: "Employers are concerned with substantial capacity, psychological stability and steady attendance." The *Rhines* Court went on to write that the Secretary, now the Commissioner, need not find a specific job for a claimant, but that it must be shown that the claimant can realistically perform in existing employment. *Id.* citing *Brinker v. Weinberger,* 522 F.2d at 18.

■ Plaintiff has proven her case with medical and vocational evidence and is entitled to the benefits for which she applied. A remand for further development of the record would only delay the receipt of the benefits for which Plaintiff is clearly entitled.

### CONCLUSION AND DECISION

The Court has considered the evidence which supports, as well as the evidence which detracts from the decision made by the ALJ. After applying the balancing test noted in *Gavin v. Heckler,* 811 F.2d at 1199 (8th Cir.1987), and cases cited therein, this Court holds that the final decision of the Commissioner is not supported by substantial evidence on the record as a whole. This case is reversed and remanded for an award of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406(B), and LR 54.2(b))[2]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996

(2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

2. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."