**UNITED STATES of America,**
**Appellee,**

v.

**Lawrence P. SMITH et al., Appellants.**

**No. 72-1657.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1973.

Decided Aug. 3, 1973.

---

3. Cert. denied, 405 U.S. 964, 92 S.Ct. 1181, 31 L.Ed.2d 239.

Edward L. Simmons, Kansas City, Mo., for appellants.

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The matter before us involves Social Security payments. Specifically it is a suit by the government for the return of an alleged overpayment of disability insurance benefits paid pursuant to the provisions of Title II of the Social Security Act, as amended, 42 U.S.C. § 423 et seq. It is a case of first impression. Neither the diligence of counsel nor our own independent research has disclosed precise prior precedent.

We will note at the outset that the recovery of overpayments to indigent, or semi-indigent, beneficiaries poses unique problems, particularly to the chancellor, arising out of the fact, among others, that such recipients are rarely in a position to make restitution of substantial funds, mistakenly or erroneously paid them, without suffering severe hardship.[1] Thus it is that we find in the Social Security Act, in 42 U.S.C. § 404, a section relating to "Overpayments and underpayments" providing, in part, that there shall not be recovery back by the United States from "any person who is without fault if such adjustment or recovery would defeat the purpose of this sub-chapter or would be against equity and good conscience."[2]

In May of 1962 defendant Lawrence P. Smith filed an application for Disability Insurance Benefits based on an alleged physical impairment. He asserted blindness in one eye and multiple sclerosis. Upon the showings made and under the applicable statutes, disability payments were awarded, effective February, 1962. These benefits, however, were stopped on March 25, 1968 upon the ground that Mr. Smith had returned to work. Thereafter he was informed that he had been overpaid for the period May 1, 1964 through March, 1968.[3] Mr.

---

\* Hon. Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Graham, Public Assistance: The Right to Receive: The Obligation to Repay, 43 N.R.U.L.R. 451 (1968); Comment: Recoupment of Welfare Overpayment, 7 Houston L.R. 635 (1970).

2. 42 U.S.C. § 404(b):
   "In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."

3. The breakdown of the figures comprising the asserted overpayment is as follows: Lawrence P. Smith, $6,001; Virginia M. Smith, his wife, $1,096; Virginia M. Smith in her fiduciary capacity as payee for minor children, $6,576, all plus interest as allowed by law, totaling $13,673.00.

Smith requested reconsideration, as a result of which the original determination was affirmed and repayment requested. A hearing before a Hearing Examiner was thereafter requested, and held in St. Joseph, Missouri, at which hearing defendant Lawrence Smith appeared in person, with counsel. The issues before the Hearing Examiner were whether the claimant's disability continued, and, if not, whether overpayments had been made and in what, if any, amounts, and whether recovery of the overpayments would defeat the purpose of 42 U.S.C. § 404(b), or be against equity and good conscience. The Hearing Examiner's decision was adverse to the defendants[4] and formed the basis for the government's motion in the District Court for summary judgment. Further administrative appeals were sought by the defendants, but were without rulings favorable to them, and the judicial review[5] available to claimants was not sought. There the matter rested until the filing of this action by the United States in August, 1971.

In the suit filed, and before us, the government, as plaintiff, brings action against defendant Lawrence Smith, his wife Virginia, individually and as fiduciary for the minor children,[6] alleging an indebtedness to the government arising out of the aforedescribed overpayments in the sum of $13,673. Defendants' answers denied the debt, and set up waiver and estoppel, as well as other defenses, against the government. Plaintiff thereupon brought a motion for summary judgment, asserting that no judicial review of the Secretary's decision had been sought by defendants and that "By virtue of the doctrine of *res judicata*, the issues of whether or not an overpayment was made, and if so, the amount of the overpayment, are not open to controversy." Defendants, in opposition, urged that the facts relied upon by the plaintiff were without support in the record; that the provisions of § 405,[7] relating to procedures to be followed by claimants in making claims against the government, had no application to the case at bar, since they were making no claim, but rather were being sued for a debt owed as parties-defendant; and, in substance, that "this case should be reopened under Section 404.-958[8] and in the interest of justice." The District Court's ruling was the

4. "DECISION

Based on the foregoing findings of fact and conclusions of law, it is the decision of the Hearing Examiner that the claimant, Lawrence P. Smith, is entitled to the establishment of a period of disability beginning July 10, 1961, which terminated March 31, 1964. It is further the decision of the Hearing Examiner that all disability insurance payments made to this claimant beginning with the month of April of 1964 and thereafter constitute an overpayment of benefits. It is further the decision of the Hearing Examiner that recovery of the amount of the overpayment from this claimant cannot be waived for the reason that the claimant was, not without fault and recovery of said overpayment would not defeat the purpose of Title II of the Social Security Act or be against equity and good conscience."

5. 42 U.S.C. § 405(g): "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district in the United States District Court for the District of Columbia. . . . "

6. 42 U.S.C. §§ 402(b), 402(d); 20 C.F.R. §§ 404.313(a), 404.314, 404.320(a).

7. 42 U.S.C. § 405 Section (b) thereof provides, in part, that "The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for payment under this subchapter."

8. This reference is to 20 C.F.R. § 404.958, defining "good cause" and must be read in conjunction with § 404.957, referring to the reopening of a "final" decision for "good cause."

grant of the government's motion for summary judgment.

In the context of the facts before us, and the statutory provisions relating thereto, there is no need for us to exhaust the application of the doctrine of *res judicata*[9] as applied to the decisions of administrative tribunals, or, as it is sometimes termed, "administrative *res judicata.*" Hughes v. Finch, 432 F.2d 93 (4th Cir. 1970). It is pertinent to observe, however, that the earlier view of some courts that the doctrine does not apply to administrative proceedings has been largely discredited. The Supreme Court, in United States v. Utah Construction and Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) took occasion to point out that its decision therein was harmonious with general principles of collateral estoppel, stating, in part, that

> "Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." 384 U.S. at 421, 86 S. Ct. at 1559. [footnotes and citations omitted]

See, also, Davis, Administrative Law Treatise, § 18.02, et seq., and cases there cited.

Although application of the doctrine of *res judicata* to administrative decisions does, indeed, serve a useful purpose in preventing the relitigation of issues properly determined administratively[10] it is not, where applicable, applied with the same rigidity as its judicial counterpart. "[P]ractical reasons may exist for refusing to apply it," [11] held the court in Grose v. Cohen, 406 F.2d 823 (4th Cir. 1969), and, continuing, "[I]n any event, when traditional concepts of *res judicata* do not work well, they should be relaxed or qualified to prevent injustice. 2 Davis, Administrative Law, § 18.03 (1958)." Particularly appropriate are such considerations to the case before us, requiring, as we have noted, that the government shall not recover an overpayment "if such recovery . . . would be against equity and good conscience." [12]

But however guarded the application of the doctrine of administrative *res judicata* generally, its application in the case at bar is specified in the regulations of the agency before us. These, it is clear, do not demand administrative finality. The matter was the subject of extensive examination in Leviner v. Richardson, 443 F.2d 1338 (4th Cir. 1971), the court pointing out that 20 C.F.R. § 404.957 permits an administrative determination to be reopened within four years after the date of notice thereof "upon a finding of good cause for reopening," [13] and that "good cause" included, *inter alia*, error in the determination or decision apparent on the face of the evidence on which it is based.[14]

---

9. See Lawlor v. National Screen Service Corp. 349 U.S. 322, 75 S.Ct. 865, 99 L. Ed. 1122 (1955) : "The term res judicata is used broadly in the Restatement to cover merger, bar, collateral estoppel, and direct estoppel." See, also, Moore's Federal Practice, Vol 1B, § 0.405 et seq.

10. Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940).

11. e. g., United States v. Stone and Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927).

12. Note 1, *supra*.

13. 20 C.F.R. § 404.957:
"An initial or reconsidered determination of the Administration or a decision of a hearing examiner or of the Appeals Council which is otherwise final . . . may be reopened:
(b) [W]ithin 4 years after the date of the notice of the initial determination . . . upon a finding of good cause for reopening such determination or decision. . . . ."

14. 20 C.F.R., § 404.958:
" 'Good cause' shall be deemed to exist where:
(c) there is an error as to such determination or decision on the face of the

The *Leviner* court also held that although the regulation "is couched in terms of reopening a decision otherwise final, it also serves to identify decisions that should not be interposed to deny subsequent applications. A decision that is subject to being reopened provides an inappropriate bar." We agree.

The government, in support of its position, cites to us a number of cases assertedly holding that where judicial review is not sought by a claimant within the time prescribed by 42 U.S.C. § 405, "the adverse decision of the Agency is final and is *res judicata*." e. g., Gardner v. Moon, 360 F.2d 556 (8th Cir. 1966). Whatever may be the dimensions of *"res judicata"* in this situation, which we will not explore, such cases are not in point on any issue before us. We do not have a claimant seeking judicial review under the act. On the contrary we have the government, as plaintiff, seeking to reduce a debt to judgment and thereafter to collect, presumably by the usual process of levy and execution. In this situation, as we noted in Burrow v. Finch, 431 F.2d 486, 491, n. 5 (8th Cir. 1970), "Where the Secretary asserts the claim of overpayment by reason of 'fault' under § 404(b) . . . there is no logical reason why the party asserting the claim should not bear the traditional burden of proving it," and proving it, by a party moving for summary judgment, means under the Rules of Civil Procedure, that he has the burden of showing the absence of a genuine issue as to any material fact. Adickes v. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970).

■ So here. The government relies for its proofs, in its motion for summary judgment, upon administrative *res judicata*, citing the hearing examiner's decision, which found, *inter alia*, fault in the claimant and no waiver of the overpayment by the government. Such reli-

evidence on which such determination or decision is based."

See, also, § 404.958(a) relating to new and material evidence.

ance will not suffice in the face of the defense, however inartistically pleaded, of error manifest on the face of the record, a well recognized exception to the *res judicata* doctrine, codified, in fact, in the Social Security Regulations.[15] Such defense the defendants may pursue and make their showings with respect thereto.

Reversed and remanded for further proceedings not inconsistent herewith.