UNITED STATES of America, Plaintiff,

v.

Wesley W. WINTERFELDT, Defendant.

Civ. A. No. 92–C–0378.

United States District Court,
E.D. Wisconsin.

May 11, 1993.

Lynne M. Solien, Asst. U.S. Atty., Milwaukee, WI, for plaintiff.

Patricia G. Krewer, Robinson, Robinson, Peterson, Berk & Cross, Appleton, WI, for defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

In this action, filed April 3, 1992, the government seeks to collect from defendant Wesley Winterfeldt ("Winterfeldt") $27,960 in overpaid social security benefits. On January 27, 1993, the government filed a motion for summary judgment. For reasons stated below, the motion is granted.

Jurisdiction in this court is based upon 28 U.S.C. § 1345.

## FACTS

On March 18, 1981, Winterfeldt, suffering from back and wrist injuries, applied for disability benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and for insurance benefits for his daughter Erika under the same act, 42 U.S.C. § 402(d). He began receiving benefits effective January 1981. In a December 1983 letter, the Social Security Administration ("SSA") notified Winterfeldt that although it believed he was medically capable of work, he would continue to receive benefits as long as he remained enrolled in an approved vocational rehabilitation program. The letter stated that an SSA official would contact Winterfeldt in May 1984 to ensure that he was still in such a

program, and instructed him to contact SSA if he left the program before that time. (Nov. 6, 1992 Koster Aff., Ex.D.)

On June 15, 1984, Winterfeldt informed SSA that his rehabilitation program would end in November 1984 and he requested that his benefits continue until then. (*Id.*, Ex.G.) In a September 17, 1984 letter, SSA informed Winterfeldt that his benefits would continue because he was still participating in the rehabilitation program and that an SSA official would contact him in November to determine whether he had left the program. (*Id.*, Ex.M.) The letter continued, "If you stop receiving rehabilitation services before then, or if there is any change in the rehabilitation services you are receiving, you must notify us." (*Id.*) Winterfeldt completed the rehabilitation program in November 1984, but did not notify SSA at the time; nor did SSA contact him.

On May 2, 1986, Winterfeldt submitted to SSA a "Work Activity Report," indicating that he had been working as a technician for Kimberly Clark since December 10, 1984, earning an annual salary of $15,600. (*Id.*, Ex. I.) Winterfeldt had received disability benefits throughout that period, and he continued receiving them until November 1986. (*Id.* at ¶ 12.) He says that from November 1984 to the end of that year he regularly contacted local SSA officers, who assured him he was entitled to the checks he was receiving; he says he assumed that the checks represented compensation for his diminished earning capacity. (Feb. 26, 1993 Winterfeldt Aff. at ¶¶ 4–8, 10.) SSA determined, however, that by virtue of Winterfeldt's employment, he was not entitled to the $27,960 of benefits he received from December 1984 to November 1986. (Koster Aff. at ¶ 12.)

On January 16, 1987, Winterfeldt filed a request for waiver of overpayment. (*Id.*, Ex. J.) SSA is required to grant such requests if the recipient of the overpayment is "without fault" and remittance of the overpayment "would defeat the purpose of [the Social Security Act] or would be against equity and good conscience." 42 U.S.C. § 404(b). On May 6, 1987, Winterfeldt and his attorney met with SSA claims representative Keith

Koster, who denied the waiver request in a written decision issued June 1, 1987. (Koster Aff., Ex.K.) Winterfeldt appealed that decision to an SSA Administrative Law Judge ("ALJ"), who held a hearing on February 5, 1988.

On April 18, 1988, the ALJ issued a written decision denying Winterfeldt's waiver request. (*Id.*, Ex. L.) The ALJ concluded that Winterfeldt was at fault in keeping the overpayment because he should have realized, based on the SSA notices he received, that his benefits were supposed to last only as long as the rehabilitation program. Further, the ALJ concluded, even if Winterfeldt did receive assurances from local SSA officers in 1984, his continued receipt of benefit payments well after his return to work should have prompted him to inquire further. (*Id.*)

On July 20, 1988, the Appeals Council of the SSA Office of Hearings and Appeals denied Winterfeldt's request for review of the ALJ's decision. (*Id.*, Ex. M.) The notice of denial stated: "If you desire a court review of the Administrative Law Judge's decision, you may commence a civil action by filing a complaint in the United States District court for the judicial district in which you reside within sixty (60) days from receipt of this letter." (*Id.*) The notice provided a variety of other information concerning commencement of a civil action as well. Winterfeldt, however, did not bring such an action, and he offers no explanation for his failure to do so.

## ANALYSIS

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To withstand summary judgment, however, the nonmoving party "must set forth specific facts showing

that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

Winterfeldt does not dispute that he was overpaid, nor that the amount of overpayment was $27,960. Rather, he claims that he was not at fault for the overpayment and that remittance of the overpayment would defeat the purpose of the Social Security Act or would be against equity and good conscience. If he is correct, the government may not collect the overpayment. 42 U.S.C. § 404(b). The government contends, however, that such a defense is barred by principles of res judicata, because the question of Winterfeldt's entitlement to a waiver, as well as the question of his overpayment, has already been decided by the ALJ.

When an administrative agency, acting in a judicial capacity, resolves a factual dispute properly before it, and both parties to the dispute have "a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings," the administrative determination is final and may not be relitigated. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). The Supreme Court has recently reaffirmed that statement of the law. *See Astoria Fed. Sav. and Loan Ass'n v. Solimino*, — U.S. —, —, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991). Each of the necessary criteria would appear to have been present in the ALJ's denial of Winterfeldt's waiver request. Winterfeldt does not contend that he lacked the opportunity to present his case fully, and he knew of, but did not pursue, the opportunity for court review of the ALJ decision, as provided for at 42 U.S.C. § 405(g).

However, on facts almost identical to those in the instant case, the Eighth Circuit in *United States v. Smith*, 482 F.2d 1120, 1124 (8th Cir.1973), declined to give res judicata effect to an SSA decision denying a waiver request. The court concluded that the decision was not truly final because, under SSA regulations formerly appearing at 20 C.F.R. §§ 404.957, .958, the administrative case could have been reopened within four years "upon a finding of good cause." *Smith*, 482 F.2d at 1123–24.

Under similar provisions in effect today, "good cause" is found if:

(1) [n]ew and material evidence is furnished;

(2) [a] clerical error in the computation or recomputation of benefits was made; or

(3) [t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made.

20 C.F.R. §§ 404.988, .989. This court concludes, notwithstanding *Smith*, that these provisions do not affect the finality of SSA adjudications, which is specifically provided for at 42 U.S.C. § 405(h). Indeed, if finality were destroyed by regulations permitting the reconsideration of otherwise binding decisions, then it should follow that this and every other district court's judgments have no res judicata effect, for relief from such judgments, on the grounds of new evidence, clerical error, or equity, among others, is broadly permitted. *See* Fed.R.Civ.P. 60; *Rufo v. Inmates of Suffolk County Jail*, — U.S. —, —, 112 S.Ct. 748, 760, 116 L.Ed.2d 867 (1992).

Winterfeldt contends that the ALJ decision should not have a preclusive effect because the government has used it against him in an offensive posture. The offensive use of claim or issue preclusion is subject to certain limitations, the most significant of which is that it may not be used in a manner "unfair" to the precluded party. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–32, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979). Offensive preclusion is unfair if the precluded party did not have the incentive to contest vigorously the previous litigation or if there are procedural devices available in the subsequent litigation that were not available previously. *Id.* at 332, 99 S.Ct. at 652. Neither condition appears to apply in this case. Winterfeldt has not explained his failure to seek court review of the ALJ decision.

The court concludes, therefore, that Winterfeldt is bound by the ALJ's determination that he was overpaid in the amount of $27,960 and that waiver of the overpayment is not required. Thus, the government's mo-

tion for summary judgment will be granted. In addition to the amount of overpayment, the government is entitled to a 10 percent surcharge to cover the costs of maintaining the lawsuit. 28 U.S.C. § 3011(a).

**IT IS THEREFORE ORDERED** that the government's January 27, 1993 motion for summary judgment is GRANTED.

**IT IS FURTHER ORDERED** that defendant Wesley Winterfeldt shall pay to the United States the amount of $30,756, representing $27,960 of overpaid benefits plus a 10 percent surcharge.

**IT IS FURTHER ORDERED** that this action is DISMISSED.