

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-2006

# Park v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-2054

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Park v. Atty Gen USA" (2006). *2006 Decisions.* Paper 2.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/2

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2054
_____

YONG WONG PARK,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
U.S. Department of Justice, Executive Office for Immigration Review
(BIA No. A27-905-890)
IJ Annie S. Garcy


_____


Submitted Under Third Circuit L.A.R. 34.1(a)
November 28, 2006


_____


Before: FUENTES and GARTH, Circuit Judges, and POLLAK, District Judge[1]

(Filed: December 29, 2006)


[1]The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

Raymond J. Aab
61 Broadway
25th Floor
New York, NY 10006
      *Counsel for Petitioner*


Peter D. Keisler
Linda S. Wernery
Sarah Maloney
Janice K. Redfern
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
      *Counsel for Respondent*


————————————

OPINION

————————————


Garth, <u>Circuit</u> <u>Judge</u>:

This appeal presents the question of whether a conviction for trafficking in

counterfeit goods or services in violation of the Trademark Counterfeiting Act of 1984,

18 U.S.C. § 2320,[2] is a conviction for "an offense relating to . . . counterfeiting," pursuant

---

[2]Before it was amended in 2006, section 2320(a) stated, in part:

Whoever intentionally traffics or attempts to traffic in goods or services and
knowingly uses a counterfeit mark on or in connection with such goods or
services shall, if an individual, be fined not more than $2,000,000 or imprisoned
not more than 10 years, or both . . .

18 U.S.C. § 2320(a) (2000).

to section 101(a)(43)(R) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(R).[3] We conclude that it is.

I

Petitioner Yong Wong Park is a native and citizen of the Republic of Korea. He was admitted to the United States as an immigrant on or about February 12, 1998. On February 18, 2000, Park pleaded guilty in the United States District Court for the Southern District of New York to one count of trafficking in counterfeit goods or services from at least February 1997 through October 1997, in violation of 18 U.S.C. § 2320.[4] On July 5, 2000, he was sentenced to a term of imprisonment of 21 months.

After his conviction, the Department of Homeland Security ("DHS") initiated removal proceedings. In a Notice to Appear, the DHS charged Park with removability under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), for having been "convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed." App. 85. At a hearing on April 25, 2002, Park admitted the factual allegations in the Notice to Appear, but denied the removal charge and filed a motion to terminate proceedings. The parties presented argument on whether the crime for which

[3]This section provides that for purposes of Chapter 12 of the INA, the term "aggravated felony" includes any "offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year." INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R).

[4]Park admitted to selling clothing which bore the counterfeit trademark of Nike and Tommy Hilfiger, and that he knew the trademark was counterfeit and so that the goods were not authentic. App. 62-63.

3

Park was convicted qualified as a crime involving moral turpitude. On June 25, 2002, the immigration judge ("IJ") determined that Park's conviction was not for a crime involving moral turpitude, and granted his motion to terminate. The DHS appealed to the Board of Immigration Appeals ("BIA"). In an Order dated April 21, 2004, the BIA vacated the IJ's decision, finding that Park was removable as charged. The BIA remanded for further proceedings.

Park then filed with the BIA both a motion to stay scheduled removal proceedings before the IJ and a motion to reconsider the BIA's April 21, 2004 decision. In a June 10, 2004 decision, the BIA determined that Park sought reconsideration because he believed the BIA had not yet decided whether his crime was committed within five years of admission, as required under INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i). As the BIA had decided this issue in its April 21, 2004 Order, it denied Park's motions.

On June 22, 2004, Park again moved before the BIA both to stay the proceedings before the IJ and to reconsider its June 10, 2004 decision. On July 15, 2004, the BIA denied the motion to stay proceedings, but granted the motion to reconsider. Noting that the question of whether Park's crime was committed within five years of admission was neither presented to nor decided by the IJ in the first instance, the BIA modified its earlier finding of removability. Without changing its finding that Park's conviction was for a crime involving moral turpitude, the BIA ordered that the parties be afforded the opportunity to litigate the time period issue before the IJ.

Before the IJ, Park applied for cancellation of removal under INA § 240A(a), 8 U.S.C.

4

§ 1229b(a). The DHS lodged a Notice of Additional Charge of Deportability, charging Park with also being removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii),[5] for having been convicted at any time after admission of an aggravated felony as defined in INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R) ("an offense relating to . . . counterfeiting, . . . for which the term of imprisonment is at least one year"). Park denied removability under the original and amended charges, and the parties presented argument on the issues of whether the crime involving moral turpitude was committed by Park within five years of his admission to the United States, and whether Park was removable for having been convicted of an aggravated felony.

On August 23, 2004, the IJ ordered that Park be removed. After finding that Park was not removable pursuant to INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), because he did not commit the crime involving moral turpitude within the time period prescribed by that provision, the IJ found that Park was, however, removable pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted at any time after admission of an aggravated felony as defined in INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R). She also noted that the government was "well within [its] right" to amend the Notice to Appear and lodge additional charges during the pendency of proceedings. App. 10.

In determining that Park's conviction was for "an offense relating to . . .

---

[5]This section states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable." INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).

5

counterfeiting," the IJ began by observing that INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R) "does not define counterfeiting by referring to any particular statute or provision in any penal code or law." App. 11. Consequently, the IJ reasoned that a wide variety of activity, such as "counterfeiting in money, . . . counterfeiting in false seals or trademarks or other copyright activity, can all fall within the definition of counterfeiting as long as an offense relates to counterfeiting." App. 11.

Next, the IJ invoked an instance where this Court considered the identical provision at issue here–INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R)–and our conclusion that by using the term "relating to," "Congress evidenced an intent to define [the listed offense] in its broadest sense." App. 11 (quoting *Drakes v. Zimski*, 240 F.3d 246, 249 (3d Cir. 2001)). The IJ continued to quote our analysis that "'[u]nless the words 'relating to' have no effect, the enumerated crime . . . must not be strictly confined to its narrowest meaning.'" App. 12 (quoting *Drakes*, 240 F.3d at 249).

Having concluded that INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R), covers a range of activities beyond the act of counterfeiting itself, the IJ proceeded to employ the formal categorical approach–considering the statutory elements of the offense rather than the particular facts underlying the conviction–in order to determine whether a violation of 18 U.S.C. § 2320 is a conviction for "an offense relating to . . . counterfeiting." The IJ explained that in order to support a conviction under 18 U.S.C. § 2320, the government must prove both that a defendant intentionally trafficked or attempted to traffic in goods or services, and that the defendant knowingly used a counterfeit mark on or in connection with such goods

6

or services. App. 13. She reasoned that although this statute is not directed at the act of counterfeiting, by criminalizing the knowing use of a counterfeit mark in connection with trafficking or attempting to traffic in goods or services, "'the statute seeks to discourage counterfeiting through the criminalization of the use of its end product.'" App. 15 (quoting *Albillo-Figueroa v. INS*, 221 F.3d 1070, 1073 (9th Cir. 2000)). The IJ thus concluded that the offense criminalized by 18 U.S.C. § 2320 was one which related to counterfeiting within the meaning of INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R).

Because Park's conviction was for an offense relating to counterfeiting; because the conviction took place after Park's admission as a permanent resident in 1998; and because Park was sentenced to a term of confinement of more than one year, the IJ found Park removable for having been convicted of an aggravated felony. App. 17; *see also* INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). In addition, because the IJ found Park had been convicted of an aggravated felony, she found him ineligible for cancellation of removal. App. 18; *see also* INA § 240A(a), 8 U.S.C. § 1229b(a). Lastly, the IJ determined that there was no evidence to indicate that Park was eligible for any other form of relief from removal and ordered him removed to the Republic of Korea.

Park timely appealed to the BIA. On March 3, 2005, the BIA affirmed the IJ's decision without opinion, pursuant to its streamlining regulations, rendering the IJ's decision the final agency determination. App. 6; *see* 8 C.F.R. § 1003.1(e)(4).

II

7

Although this Court lacks jurisdiction "to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]," 8 U.S.C. § 1252(a)(2)(C), we have jurisdiction to determine our jurisdiction, that is, to determine whether Park has been convicted of an aggravated felony and thus, whether 8 U.S.C. § 1252(a)(2)(C) even applies. *See Drakes,* 240 F.3d at 247. In addition, per 8 U.S.C. §§ 1252(a)(2)(D) and (a)(5), we have jurisdiction to review the question of law Park raises.

## III

The government urges us to apply the principles of *Chevron v. Natural Res. Def. Council*, 467 U.S. 837 (1984) to this case, instead of engaging in *de novo* review of the IJ's decision. However, as we have previously discussed, while "[w]e usually afford deference to decisions of administrative agencies when we are reviewing the agency's determination of a statute the agency is charged with administering, . . . legal issues that turn on a pure question of law not implicating the agency's expertise do not raise the same concerns under *Chevron*." *Patel v. Ashcroft*, 294 F.3d 465, 467 (3d Cir. 2002); *see also Drakes*, 240 F.3d at 250-51. For example, while we are mindful of the fact that *Chevron* deference applies in general to the Attorney General's interpretation of the INA, *see INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999), as we observed in *Patel*, the concerns motivating that deference are largely absent here. *See Patel*, 294 F.3d at 467-68 (citing *Aguirre-Aguirre*, 526 U.S. at 425).[6]

---

[6]In *INS v. Aguirre-Aguirre*, the Supreme Court explained that:

[J]udicial deference to the Executive Branch is especially appropriate in the

8

Moreover, as we noted in *Drakes*, the Attorney General has no particular expertise in defining a term under federal law, yet it is "what federal courts do all the time." *Drakes*, 240 F.3d at 251. For these reasons, here neither the Attorney General nor the BIA–let alone an individual IJ–"is . . . entitled to *Chevron* deference as to whether a particular federal offense is an aggravated felony." *Bobb v. Attorney General of the U.S.*, 458 F.3d 213, 217 n.4 (3d Cir. 2006). We thus engage in *de novo* review.

IV

Per INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), an alien convicted of an "aggravated felony" at any time after admission is deportable. Per INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R), the term "aggravated felony" includes "an offense relating to . . . counterfeiting . . . for which the term of imprisonment is at least one year." Park was convicted of violating 18 U.S.C. § 2320, which required both that he "intentionally traffic[ked] or attempt[ed] to traffic in goods or services," and that he "knowingly use[d] a counterfeit mark on or in connection with such goods or services." 18 U.S.C. § 2320. Park argues that a conviction for violating 18 U.S.C. § 2320 is not "an offense relating to

---

immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations. A decision by the Attorney General to deem certain offenses violent offenses committed in another country as political in nature, and to allow the perpetrators to remain in the United States, may affect our relations with that country or its neighbors. The judiciary is not well positioned to shoulder primary responsibility for assessing the likelihood and importance of such diplomatic repercussions.

526 U.S. at 425 (internal quotation marks and citations omitted).

counterfeiting," and thus is not an aggravated felony.

Park contends that in determining whether his conviction under 18 U.S.C. § 2320 is for an "offense relating to counterfeiting," the relevant comparison, using the categorical approach, is between the elements of 18 U.S.C. § 2320 and those of 18 U.S.C. § 471, which criminalizes "falsely mak[ing], forg[ing], counterfeit[ing], or alter[ing] any obligation or other security of the United States," with intent to defraud. 18 U.S.C. § 471. Park's argument rests on the assumption that 18 U.S.C. § 471 represents the definition of counterfeiting under federal law. However, Park offers no support for this assumption, and in fact, even a brief look at Chapter 25 of Title 18 of the United States Code, where 18 U.S.C. § 471 is codified, reveals that 18 U.S.C. § 471 is simply one of many federal statutes which criminalize several different types of counterfeiting. For example, in addition to criminalizing the fabrication of money or monetary instruments, other sections of this Chapter criminalize, *inter alia*, the counterfeiting of seals of courts and signatures of judges or court officers (18 U.S.C. § 505); the counterfeiting of seals of departments or agencies (18 U.S.C. § 506); and the counterfeiting of ship's papers (18 U.S.C. § 507). In addition, the term "counterfeit" is used in other chapters of Title 18. For instance, Chapter 75 criminalizes the counterfeiting of a passport (18 U.S.C. § 1543); Chapter 83 criminalizes the counterfeiting of keys suited to any lock adopted by the Post Office (18 U.S.C. § 1704); and, of particular relevance here, Chapter 113 criminalizes trafficking in counterfeit goods or services (18 U.S.C. § 2320).

Furthermore, Park ignores the fact that INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R), does not define the "aggravated felony" as "counterfeiting," but rather as "an

10

offense *relating to . . .* counterfeiting." *Id.* (emphasis added). This distinction is critical. The

Supreme Court has stated that "the ordinary meaning of ["relating to"] is a broad one."

*Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992) (explaining that "relating to"

means "'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into

association with or connection with'") (quoting Black's Law Dictionary 1158 (5th ed.

1979)). Indeed, as we stated in *Drakes*, by using the phrase "an offense *relating to*,"

"Congress evidenced an intent to define [the listed offenses] in [their] broadest sense . . . .

Unless the words 'relating to' have no effect, the enumerated crime . . . must not be strictly

confined to its narrowest meaning." *Drakes*, 240 F.3d at 249. *See also Kamagate v. Ashcroft*,

385 F.3d 144, 154 (2d Cir. 2004) (noting that in the context of subsection (R), the term

"relating to" is used "to define aggravated felonies by reference to the *general subject* of the

offense of conviction, suggesting Congress's intent to reach more broadly than any single

statute.") (emphasis added).

Considering the broad reach of the term "relating to," certainly a statute which

prohibits the knowing use of a counterfeit mark[7] is a statute which codifies an offense

---

[7]The offense for which Park was convicted defined "counterfeit mark" as:

> a spurious mark– that is used in connection with trafficking in goods or services; that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and the use of which is likely to cause confusion, to cause mistake, or to deceive; or a spurious designation that is identical with, or substantially

relating to counterfeiting. Indeed, it is common for a federal criminal statute pertaining to counterfeiting to include as an element of the crime *either* the act of counterfeiting *or* the knowing use of the end product of an act of counterfeiting. *See, e.g.*, 18 U.S.C. § 505 (requiring as an element either the counterfeiting of a seal of a United States court or the knowing use of such a counterfeit seal, knowing it to be counterfeit); 18 U.S.C. § 506 (requiring as an element either the counterfeiting of a seal of a United States agency or the knowing use of such a counterfeit seal); 18 U.S.C. § 1543 (requiring as an element either the counterfeiting of a passport or the willful and knowing use of a counterfeit passport).

It is clear, then, that by penalizing those who traffic in goods while knowingly using a counterfeit mark, 18 U.S.C. § 2320 is simply one of several federal criminal statutes which "seeks to discourage [the act of] counterfeiting through the criminalization of the use of its end product." *Albillo-Figueroa*, 221 F.3d at 1073 (finding that 18 U.S.C. § 472, which criminalizes the knowing use or possession of counterfeit bills with the intent to defraud, is an "offense relating to counterfeiting"). As such, the statute defines an offense relating to counterfeiting, and Park's conviction for violating 18 U.S.C. § 2320 was properly counted as an "aggravated felony," per INA § 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R).[8]

_____

> indistinguishable from, a designation as to which the remedies
> of the Lanham Act are made available . . .

18 U.S.C. § 2320(e)(1) (2000).

[8]We reject Park's argument that even if he is removable for having been convicted of an aggravated felony, because his conviction was "nevertheless 'not a particularly serious crime' . . ., [he] is entitled to relief from removal." (Pet'r Br. 17.) The only form of relief from removal for which Park applied was cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a).

12

V

Park also argues that the doctrine of judicial estoppel bars the DHS from lodging an additional removal charge based on the same facts alleged in the Notice to Appear. Judicial estoppel is "a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies . . . ; rather it is intended to prevent litigants from playing fast and loose with the courts." *In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 229 (3d Cir. 1998). As such, "[a]sserting inconsistent positions does not trigger the application of judicial estoppel unless intentional self-contradiction is used as a means of obtaining unfair advantage." *Id.*

The IJ did not err by allowing the DHS to amend the Notice to Appear by lodging an additional charge. First of all, the BIA has held that "unless [it] qualifies or limits a remand for a specific purpose, the remand is effective for the stated purpose and for consideration of any and all matters which the [IJ] deems appropriate . . . or which are brought to his attention in compliance with the appropriate regulations." *Matter of Patel*, 16 I. & N. Dec. 600, 601 (BIA 1978). The regulations do permit the lodging of additional charges in removal proceedings. *See* 8 C.F.R. § 1240.10(e) ("At any time during the proceeding, additional or substituted charges of inadmissibility and/or deportability may be lodged by the Service in

Aliens convicted of an aggravated felony are ineligible for this relief, regardless of whether their crime was particularly serious. *See* INA § 240A(a), 8 U.S.C. § 1229b(a) (barring an alien convicted of an "aggravated felony" from eligibility for cancellation of removal).

13

writing."). This practice has also been approved by the courts. *See De Faria v. INS*, 13 F.3d 422, 424 (1st Cir. 1993) (where hearing was reopened, there was no impropriety in DHS lodging substitute charges which could have been lodged at the outset).

Moreover, it would have been inappropriate to apply the doctrine of judicial estoppel here because the DHS did not advance two inconsistent positions. Instead, the DHS simply lodged an alternative, yet compatible, removal charge. To be sure, it is not uncommon for the DHS to conceive of a single crime as qualifying both as a crime involving moral turpitude and as an aggravated felony. *See e.g., Bobb*, 458 F.3d at 215 (based on a plea of guilty to one crime, petitioner was charged with being removable for having committed an aggravated felony and later was additionally charged with being removable for having committed a qualifying crime involving moral turpitude). Furthermore, as the First Circuit has reasoned, "there is no requirement that the [DHS] advance every conceivable basis for [removability] in the [Notice to Appear]. . . . [S]uch a rule would needlessly complicate proceedings in the vast majority of cases." *De Faria*, 13 F.3d at 424.

CONCLUSION

Because we determine that Park was convicted of an aggravated felony and that the question of law he raised is without merit, we will dismiss the petition.

14