# Matter of Ramon JASSO ARANGURE, Respondent

*Decided December 29, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The Department of Homeland Security is not precluded by res judicata from initiating a separate proceeding to remove an alien as one convicted of an aggravated felony burglary offense under section 101(a)(43)(G) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G) (2012), based on the same conviction that supported a crime of violence aggravated felony charge under section 101(a)(43)(F) in the prior proceeding. *Bravo-Pedroza v. Gonzales*, 475 F.3d 1358 (9th Cir. 2007), not followed.

(2) Home invasion in the first degree in violation of Michigan Compiled Laws section 750.110a(2) is a categorical burglary offense under section 101(a)(43)(G) of the Act.

FOR RESPONDENT: Russell R. Abrutyn, Esquire, Berkley, Michigan

FOR THE DEPARTMENT OF HOMELAND SECURITY: Sarah Shilvock, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY, MALPHRUS, and CREPPY, Board Members.

PAULEY, Board Member:

In a decision dated December 6, 2016, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), as an alien convicted of an aggravated felony burglary offense under section 101(a)(43)(G) of the Act, 8 U.S.C. § 1101(a)(43)(G) (2012), and ordered him removed from the United States.[1] The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who was admitted to the United States as a lawful permanent resident on March 17, 2003. The record reflects that on December 1, 2014, he was convicted on a plea of guilty to

---

[1] The Immigration Judge incorporated by reference a decision dated December 1, 2016, in which he determined the issue of the respondent's removability and denied his motion to terminate the proceedings.

home invasion in the first degree in violation of section 750.110a(2) of the Michigan Compiled Laws.[2] On January 20, 2015, the respondent was sentenced to a term of imprisonment of 18 months to 20 years.

The Department of Homeland Security ("DHS") issued a notice to appear on April 21, 2015, charging the respondent with removability as an alien convicted of an aggravated felony crime of violence under section 101(a)(43)(F) of the Act. On April 27, 2016, the Immigration Judge sustained the charge, finding that the respondent was convicted of a crime of violence, as defined in 18 U.S.C. § 16(b) (2012), and ordered him removed from the United States. The respondent appealed from that decision.

In a decision dated July 26, 2016, we remanded the record to the Immigration Judge in light of an intervening decision of the United States Court of Appeals for the Sixth Circuit, in whose jurisdiction this case arises, in *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016), which declared 18 U.S.C. § 16(b) to be unconstitutionally vague. In light of this change in law, the Immigration Judge terminated the removal proceedings on remand in a decision dated September 13, 2016.[3]

The DHS issued a second notice to appear on September 15, 2016, charging the respondent with removability as an alien convicted of an aggravated felony burglary offense under section 101(a)(43)(G) of the Act, based on the respondent's home invasion conviction. Through counsel, the respondent filed a motion to terminate the new proceedings, arguing that his offense is not an aggravated felony and that these proceedings are barred by the doctrine of res judicata. The DHS submitted a response in opposition to the respondent's motion.

In his December 1, 2016, decision, the Immigration Judge denied the motion to terminate and determined that the respondent's conviction was for

---

[2]  Section 750.110a(2) of the Michigan Compiled Laws provides as follows:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>     (a) The person is armed with a dangerous weapon.
>     (b) Another person is lawfully present in the dwelling.

[3]  The Immigration Judge's order did not specify whether the termination was with prejudice, which is an issue disputed by the parties. For purposes of this appeal, we will assume, arguendo, that the termination order was with prejudice.

an aggravated felony burglary offense under section 101(a)(43)(G) of the Act.  He ordered the respondent removed in his December 6, 2016, decision, from which the respondent has appealed.[4]

The respondent argues on appeal that the Immigration Judge erred in finding that these proceedings are not barred by the doctrine of res judicata. In response, the DHS contends that res judicata does not apply because the original charge was that the respondent's conviction is for a crime of violence aggravated felony under section 101(a)(43)(F) of the Act, while the current charge is based on a different statute, section 101(a)(43)(G).

The respondent also asserts that his offense is not a categorical aggravated felony under section 101(a)(43)(G) of the Act.  According to the respondent, the Michigan home invasion statute is divisible because "the prosecutor must choose between the following elements:  entering (or breaking and entering) with the intent to commit a crime *or* committing a crime while entering, while present in, or while leaving a dwelling."  The respondent contends that the latter "element" falls outside the generic burglary definition and that he was convicted of that "element."  The DHS argues the respondent's offense is a categorical aggravated felony under section 101(a)(43)(G).

## II.  ANALYSIS

### A.  Res Judicata

Res judicata is a common law principle that provides that "a final judgment on the merits bars a subsequent action between the same parties over the same cause of action."  *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502 (2001)); *see also Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577−78 (6th Cir. 2008).  Under res judicata, a subsequent cause of action is barred by an earlier one if it "involves the same 'claim' or—'nucleus of operative fact'—as the first."  *Channer*, 527 F.3d at 280 (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)); *see also Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (noting that "a cause of action consists of 'a core of operative facts which give rise to a remedy'" (citation omitted)).  According to the Supreme Court, the rationale undergirding the doctrine of res judicata is threefold:  it limits "the

---

[4]   On April 7, 2017, we again remanded the record to the Immigration Judge to consolidate the original proceedings with the current proceedings and to include in the record certain documents deemed necessary for adjudication of the respondent's appeal.  The Immigration Judge issued an order on April 19, 2017, complying with our request and certifying the record for adjudication of the respondent's appeal.

expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153−54 (1979); *see also B&B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293, 1302–03 (2015).

Res judicata may also apply in the context of administrative law. *Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). Many of the circuit courts that have considered the application of res judicata in administrative proceedings have determined, however, that the doctrine applies more flexibly in that context than it does in judicial proceedings. *See Artukovic v. INS*, 693 F.2d 894, 898 (9th Cir. 1982) ("[I]n the administrative law context, the principles of . . . *res judicata* are applied flexibly."); *see also, e.g.*, *Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1377−78 (11th Cir. 2011); *Johnson v. Whitehead*, 647 F.3d 120, 128−29 (4th Cir. 2011); *Alvear-Velez*, 540 F.3d at 677; *Quiñones Candelario v. Postmaster Gen. of U.S.*, 906 F.2d 798, 801 (1st Cir. 1990); *Facchiano v. U.S. Dep't of Labor*, 859 F.2d 1163, 1167 (3d Cir. 1988); *United States v. Smith*, 482 F.2d 1120, 1123 (8th Cir. 1973). The Sixth Circuit agrees with this view. *See Parker v. Califano*, 644 F.2d 1199, 1202 (6th Cir. 1981) ("[A]dministrative res judicata . . . is applied with less rigidity than its judicial counterpart.").[5]

In the prior proceedings in this case, the respondent admitted the factual allegations of the initial notice to appear, and the Immigration Judge sustained the charge that the respondent's conviction was for an aggravated felony crime of violence under section 101(a)(43)(F) of the Act. When a change in law resulted in the termination of those proceedings, the DHS brought the current proceedings based on the charge that the respondent was convicted of an aggravated felony burglary offense under section 101(a)(43)(G). For the following reasons, we conclude that the Immigration Judge properly determined that res judicata does not bar these proceedings.

Although both of the proceedings brought against the respondent are based on the same conviction and the same charge of removability under section 237(a)(2)(A)(iii) of the Act, the underlying basis for the charge in each is different. In this regard, the proof necessary to establish whether a conviction is for a "crime of violence" or a "burglary offense" is not the

---

[5] In *Matter of Barragan-Garibay*, 15 I&N Dec. 77, 78−79 (BIA 1974), we applied collateral estoppel, which is based on the same principles as res judicata, in exclusion proceedings to preclude relitigation of the question whether an alien effected an entry. We also applied the doctrine of collateral estoppel in *Matter of Fedorenko*, 19 I&N Dec. 57, 61−64 (BIA 1984), where we gave conclusive effect to facts found during the respondent's prior denaturalization proceedings. We note that the question of removability based on criminal charges, which is at issue in this case, is of a very different nature.

same, because the elements of each charge are different. This indicates that the "operative facts" are also different. *See Channer*, 527 F.3d at 281 (holding that res judicata did not bar the Government from bringing a second removal proceeding based on the alien's robbery conviction after his drug conviction that was litigated in a prior removal proceeding was vacated, even though the robbery conviction could have been alleged at the same time).

Moreover, a crime of violence was the most appropriate charge under the law at the time proceedings against the respondent were first commenced. In the initial proceedings, the Immigration Judge properly sustained the charge of removability predicated on his determination that, under the applicable precedent at the time, the respondent's offense was a crime of violence as defined by 18 U.S.C. § 16(b). His finding was only rendered invalid because the Sixth Circuit's intervening decision in *Shuti* declared § 16(b) to be void for vagueness. At the time the initial notice to appear was filed on June 8, 2015, no court had found § 16(b) to be void for vagueness, so the Sixth Circuit's ruling is a circumstance that the DHS could not have legitimately anticipated.

Whether a particular offense is an aggravated felony is a legal determination affected by complex laws that are in constant flux, as illustrated by the effect of the Sixth Circuit's decision in *Shuti* on this case. Often, the DHS must determine which causes of action to bring against an alien, based only on preliminary information available when proceedings are initiated. To require the DHS to anticipate every possible turn of events and charge an alien with all conceivable grounds of removability would not provide the judicial economy that is a fundamental goal of res judicata. *See Duhaney v. U.S. Att'y Gen.*, 621 F.3d 340, 350−51 (3d Cir. 2010); *Yong Wong Park v. Att'y Gen. of U.S.*, 472 F.3d 66, 73 (3d Cir. 2006) (stating that requiring the DHS to present every possible basis for removability in the notice to appear "would needlessly complicate proceedings in the vast majority of cases" (citation omitted)).

Furthermore, it is not practical to require the DHS to present all possible bases for removal in a single proceeding. For example, the DHS would have to determine which charges might reasonably lie and to present proof of each, even when there is no reason to foresee that one charge may not succeed. Additionally, Immigration Judges would need to rule on multiple, redundant charges. Such a requirement would further burden the already backlogged immigration system. *See Grose v. Cohen*, 406 F.2d 823, 824−25 (4th Cir. 1969) (stating that "practical reasons may exist for refusing to apply" res judicata in administrative proceedings).

The DHS has broad discretion in determining whether to initiate proceedings and which charges of removability to bring. *See Matter of*

*E-R-M- & L-R-M-*, 25 I&N Dec. 520, 523 (BIA 2011). This is especially true in the context of aggravated felony grounds of removability, where the societal interest in removing criminal aliens is strongest. In that regard, we note that the Supreme Court has stated that the rules of preclusion should "apply *except 'when a statutory purpose to the contrary is evident.'" Astoria*, 501 U.S. at 108 (emphasis added) (citations omitted). Accordingly, we consider the removal of aliens who have committed aggravated felonies to be a special concern that merits an even greater degree of flexibility and forbearance in the application of the res judicata doctrine.

Because of "Congress' clear and emphatic position with respect to" aliens convicted of aggravated felonies and other criminal offenses, several courts of appeals have indicated that res judicata may not even apply in the specific context of their removal.[6] *Channer*, 527 F.3d at 280 n.4 (stating that aliens convicted of aggravated felonies "fall[] into the category of aliens whom Congress repeatedly and unambiguously has sought to remove" and noting that res judicata "should not be applied so as to frustrate clearly expressed congressional intent"); *see also Dormescar v. U.S. Att'y Gen.*, 690 F.3d 1258, 1268 & n.10 (11th Cir. 2012); *Johnson*, 647 F.3d at 130−31; *Duhaney*, 621 F.3d at 348 n.4; *cf. Duvall v. Att'y Gen. of U.S.*, 436 F.3d 382, 391−92 (3d Cir. 2006) (finding that "application of the doctrine of collateral estoppel was unwarranted" where it contravened the clear intent of Congress "to ensure and expedite the removal of aliens convicted of serious crimes"); *cf. also Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 827−28 (6th Cir. 2013) (stating that collateral estoppel principles do not apply where Congress has demonstrated a contrary intent).

To the extent that there is tension between the public interest in finality of administrative judgments and Congress' clear intent to remove criminal aliens, we believe the latter controls. Several courts agree with this position, which is supported by congressional intent and the Act itself. *Quiñones Candelario*, 906 F.2d at 801 ("[I]n the context of administrative proceedings, *res judicata* is not automatically and rigidly applied in the face of contrary

---

[6] Congress' intent to expedite the removal of aliens convicted of serious crimes is evident in several revisions to the Act, which not only establish special proceedings to handle such cases but also largely insulate orders of removal against criminal aliens from judicial review. *See* sections 238, 242(a)(2)(C) of the Act, 8 U.S.C. §§ 1228, 1252(a)(2)(C) (2012); *see also* section 236(c)(1) of the Act, 8 U.S.C. § 1226(c)(1) (2012) (providing for mandatory detention of certain criminal aliens); Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 321, 110 Stat. 3009-627 to -628; Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, §§ 440, 442, 110 Stat. 1214, 1276–80; *Leocal v. Ashcroft*, 543 U.S. 1, 1 n.1 (2004) (discussing the history of aggravated felony enactments); *Duhaney*, 621 F.3d at 351 ("Congress has repeatedly amended the immigration laws to facilitate the removal of aliens who have been convicted of aggravated felonies.").

public policy."); *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir. 1971) (stating that res judicata is "rejected when [its] application would contravene an overriding public policy"). Therefore, while we acknowledge the possibility that the DHS could have filed an amended notice to appear at some point in the original proceeding, we conclude that it was not required to do so. *See Yong Wong Park*, 472 F.3d at 73 (stating that "there is no requirement that the [DHS] advance every conceivable basis for [removability] in the [Notice to Appear]" (alterations in original) (citation omitted)). We also do not find it appropriate for the res judicata determination to turn on whether the DHS brought the burglary charge on remand while the original proceeding was still pending, or, as it did, shortly after the proceeding became administratively final.

In view of the clear congressional intent to remove criminal aliens, we conclude that res judicata should not apply in this case. A contrary holding would leave some respondents in a sort of legal limbo, because they would be ineligible to adjust to a legal immigration status but would not be removable if the DHS could not initiate new proceedings against them. It is unlikely that Congress intended for aliens, especially those charged with criminal grounds of removability, to remain in such an uncertain status. *See Matter of Pangan-Sis*, 27 I&N Dec. 130, 136 (BIA 2017).

In reaching our conclusion that res judicata does not apply in this case, we respectfully disagree with the Ninth Circuit's decision in *Bravo-Pedroza v. Gonzales*, 475 F.3d 1358 (9th Cir. 2007), where the court concluded that res judicata barred the Government from issuing a second notice to appear based on a conviction that it could have presented in the first case. Relying on the language of the regulation that is currently at 8 C.F.R. § 1003.30 (2017)), the court ruled that any new charges must be brought by the DHS "*during the pendency of immigration proceedings*." *Id*. at 1360. However, we do not understand that regulation, which enables the bringing of "additional or substituted" charges at any time during the same proceeding, as intended to address the issue of res judicata, which necessarily involves charges brought in a new proceeding.

The respondent contends that he should prevail under the rationale in *Bravo-Pedroza*, because the DHS had the opportunity to charge the aggravated felony burglary ground while his case was on remand. It is true that, in civil actions outside the context of immigration or other administrative proceedings, the application of res judicata extends to issues that "should have been litigated" in a prior proceeding, as well as issues that actually were litigated. *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002). However, like the courts in *Duhaney* and *Channer*, we disagree with the Ninth Circuit that this aspect of the res judicata doctrine is dispositive in immigration proceedings where the grounds of removability charged are

criminal in nature. *See Duhaney*, 621 F.3d at 350 (declining to follow *Bravo-Pedroza*); *Channer*, 527 F.3d at 282 (same).[7]

In sum, we conclude that the DHS is not precluded by res judicata from initiating a separate proceeding to remove the respondent as an alien convicted of an aggravated felony burglary offense under section 101(a)(43)(G) of the Act based on the same conviction that supported the crime of violence aggravated felony charge in the prior proceeding.

## B. Burglary

We also agree with the Immigration Judge's finding that home invasion in the first degree in violation of Michigan Compiled Laws section 750.110a(2) is a categorical burglary offense under section 101(a)(43)(G) of the Act. The elements of that crime when committed by "breaking and entering" are that the defendant (1) broke into a dwelling; and (2) entered the dwelling; and (3) either intended to commit an offense when breaking and entering or committed the offense when entering, present in, or leaving the dwelling; and (4) when entering, present in, or leaving the dwelling, was armed with a dangerous weapon and/or another person was lawfully present in the dwelling. *See* M. Crim. JI 25.2a. The elements of the crime when committed by "entering without permission" are that the defendant (1) entered a dwelling without permission; and (2) either intended to commit an offense when entering, or committed the offense when entering, present in, or leaving the dwelling; and (3) when entering, present in, or leaving the dwelling, was armed with a dangerous weapon and/or another person was lawfully present in the dwelling. *See* M. Crim. JI 25.2c.

The generic definition of burglary, as defined by the United States Supreme Court, is "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). The respondent argues that committing a crime while "in the act of entering, while being present in, or while leaving a dwelling" falls outside the generic definition of burglary in *Taylor*. However, we agree with the Immigration Judge and the DHS that the added elements under the Michigan statute of committing the crime while

---

[7] We note that the Ninth Circuit has distinguished its holding in *Bravo-Pedroza*, albeit in an unpublished decision, in a case involving a change in the law that created an "altered situation" between the petitioner's first and second orders of removal. *See Lopez-Bazante v. Gonzales*, 237 F. App'x 131, 134 (9th Cir. 2007) ("We recognize an exception to res judicata 'where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation.'" (citations omitted)). As previously noted, there was a significant change in law during the pendency of the respondent's initial proceedings when the circuit courts found 18 U.S.C. § 16(b) to be void for vagueness, thereby invalidating the crime of violence charge against him.

"entering, present in, or exiting" a dwelling, if anything, may narrow the scope of the statute's definition of burglary, rather than expanding it to include conduct outside of the generic definition.

We further agree that the entirety of the statute falls within the generic burglary definition and that the offense of home invasion is an aggravated felony under section 101(a)(43)(G) of the Act. In *United States v. Quarles*, 850 F.3d 836, 840 (6th Cir. 2017), the Sixth Circuit held that third degree home invasion under Michigan law is categorically equivalent to generic burglary. According to the court, generic burglary "as defined in *Taylor*, does not require intent at entry; rather the intent can be developed while 'remaining in'" the dwelling without permission.[8] Because we concur with this assessment, we conclude that the respondent is removable as charged. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[8]  The court in *Quarles* relied on *United States v. Priddy*, 808 F.3d 676, 685 (6th Cir. 2015), which rejected the very argument advanced by the respondent, namely, that a person who committed a crime while leaving a dwelling was not within the ambit of a generic burglary offense. The Sixth Circuit found that the intent to commit a crime did not have to exist at the time of entry and that first degree home invasion under Michigan law was within the parameters of generic burglary because it was a type of unauthorized "remaining in" burglary offense within the meaning of *Taylor*. While the Sixth Circuit has recently abrogated its holding in *Priddy* that the Tennessee statute at issue there covers a burglary offense, it did so on other grounds, specifically, that the Tennessee statute reached vehicles and other structures not covered by generic burglary and was not divisible. *United States v. Stitt*, 860 F.3d 854, 858−60. 862−63 (6th Cir. 2017) (en banc).